BANKS and others, executors, &c. *vs.* WALKER and others.

t is a principle of the common law, that an alien can neither inherit lands himself from a person who is not an alien, nor transmit lands by descent to any other person.

Nor, by the common law, could a natural born subject or citizen transmit lands by descent to another mediately, through the blood of an alien. Thus in the case of grandfather, father and son, if the father was an alien, whether he was or was not living at the time of the descent cast, the grandfather could not transmit lands by descent to the grandson, although both of them were natural born subjects or citizens, or had been duly naturalized. But if the person who died seised of real estate had inheritable blood, such real estate would descend to his next heir who had such inheritable blood, although the person who would otherwise have been the heir of the decedent was an alien.

Thus if the deceased had two sons, and the eldest was an alien, and the youngest was a natural born subject or citizen, the alienage of the eldest son, who otherwise would have been the heir at law of his father, would not prevent the real estate of the father from descending to the youngest son, as heir at law.

And by the common law of England, the alienage, or attainder, of the father did not prevent one of his sons from inheriting directly from another son.

The 22d section of the chapter of the revised statutes, relative to the descent of real property, which provides that no person capable of inheriting under the provisions of that chapter, shall be precluded from such inheritance by reason of the alienism of any *ancestor* of such person, is broad enough to remove a disability arising from the alienism of the father and grandfather of the person claiming the inheritance; but it does not remove the disability of a person who, in tracing his pedigree and consanguinity as collateral heir of the person dying seised of the premises, must trace it mediately through the blood of the father of the latter, an alien; and who was not an *ancestor* of the claimant.

Where it is clearly inferable from a record of naturalization that the alien had not, at least three years previous to the date thereof, declared on oath his intention to become a citizen of the United States, and to renounce all allegiance to any foreign prince or sovereignty, and particularly to the king of the country of which he was a subject, as required by the act of 1802; but that the court has mistaken the registry of the arrival of the alien in the United States, for such a declaration of intention, *it seems* the naturalization is invalid.

But if such record is valid, upon its face, it is conclusive as to the regularity of the proceedings, and of the naturalization of the alien. And such record cannot be contradicted by extrinsic proof that no such declaration of intention had in fact been made.

The complainant, in a foreclosure suit, cannot make a person who claims the mortgaged premises adversely to both the mortgagor and the mortgagee a party defendant in such suit. And if he does so, and the fact of such adverse claim appears from the complainant's bill, the party thus made a defendant may demur to the bill for want of equity as to such defendant.

Where real estate is sold at auction and without warranty as to the title, and is con-

Banks *v.* Walker.

veyed accordingly, and a bond and mortgage is taken back for the purchase money, it is no defence to a suit to foreclose the mortgage that the title failed in part; where there was no fraud or misrepresentation on the part of the mortgagee, and where the property was put up and sold at the risk of the purchaser.

This was an appeal, by J. Walker, one of the defendants, from a decree of the late vice chancellor of the first circuit. The bill was filed by the executors of Eliza McCarthy deceased, who was the widow of the late Denis McCarthy of the city of New-York, to foreclose a mortgage given to her, for a part of the purchase money of a house and lot on the east side of Broadway, upon which a part of the Carlton House is now built; which mortgage was given by the appellant under the following circumstances:

Denis McCarthy was born in Ireland, of parents who were domiciled there, and who with their ancestors were British subjects, and continued to be so until the time of their deaths. He came to this country at an early day, and was a citizen of this state at the time of his death in July, 1835. He died seised of the premises in question, without any issue surviving him, but leaving a widow who was entitled to dower in his real estate, and his sister Joanna Bant, an alien, who survived him. The widow supposing the real estate of her deceased husband had escheated to the state, subject to her right of dower therein, applied to the legislature for a release of the interest of the state therein. The act of May, 1836, was thereupon passed, which authorized the commissioners of the land office to release to her the interest which the state had acquired by escheat, on condition that the premises, including her dower therein, should be sold under the direction of the vice chancellor of the first circuit, and that the net proceeds of the sale, after deducting costs and charges and the commutation money which was to be paid into the state treasury, should be equally divided between her and Mrs. Bant, the sister of the decedent. And upon the payment of $1344, by the widow, for the amount of the commutation money to the state, the commissioners of the land office released to her all the interest which the state had acquired in the premises by the escheat.

Banks *v.* Walker.

The vice chancellor thereupon made an order for a sale of the premises at public auction, under the direction of Master T. A. Emmett, upon three weeks' notice, to be published in two daily papers, and upon such terms and conditions as the master should prescribe, and that the master and Mrs. McCarthy should execute conveyances therefor to the purchaser or purchasers, in such form as the master should prescribe; and that the master, out of the proceeds of the sale, should pay the costs and expenses of the proceedings, and refund to Mrs. McCarthy the amount paid by her to the state for commutation money, and divide the residue of such proceeds equally between her and Mrs. Bant. In pursuance of that order the premises were advertised and sold by the master; in November, 1836, to J. Walker, the appellant in this cause, for the sum of $38,500; which sale was confirmed by the vice chancellor, upon a report thereof made by the master. And on the 14th of December, 1836, the master and Mrs. McCarthy conveyed the premises to the purchaser, in pursuance of such sale; by a deed containing covenants only against their own acts and incumbrances. Upon the execution of that conveyance, Walker gave to Mrs. McCarthy the bond and mortgage in this case for the one-half of the whole purchase money, payable in two years with semi-annual interest; she having paid her half of the expenses and commutation money out of her own funds. He also secured to Mrs. Bant her proportion of the other half of the purchase money, which he subsequently paid; and he paid the other half of the commutation money and expenses to the master. He subsequently paid $250 of the principal of Mrs. McCarthy's bond and mortgage, leaving $19,000 still due; upon which he continued to pay the semi-annual interest until the 14th of December, 1842, inclusive.

In June, 1843, Denis McCarthy, of Oneida county, who claimed to be a collateral heir of Denis McCarthy deceased, brought an ejectment suit against the tenants of Walker, to recover possession of the mortgaged premises. And Walker having declined paying any thing more upon his bond and mortgage until the final result of that suit should be ascertained,

and the mortgagee having died, her executors, in August, 1843, filed their bill in this cause to foreclose and obtain satisfaction of the bond and mortgage. The defendant Walker, in his answer, admitted the sale to him; and the giving of the bond and mortgage to Mrs. McCarthy to secure the payment of one half of the purchase money of the premises. But he set up, as a defence to the suit, that at the time of the sale she represented to him that all the heirs at law of Denis McCarthy, her deceased husband, at the time of his death were aliens, so that his real estate had escheated to the state, subject to her right of dower therein, and had been released to her pursuant to the directions of the act aforesaid; but that since the sale, and the giving of the bond and mortgage, he had been informed and believed that such representations were untrue; that Denis McCarthy of Oneida county, who had been naturalized in 1834, in the court of common pleas of Saratoga county, was an heir at law of her deceased husband and became entitled to his real estate, as such heir, at the time of his death in July, 1835; and that Mrs. McCarthy well knew the same when she made such representations to the defendant Walker, at the time of the sale, and also at the time she presented her petition to the legislature.

The defendant Walker further alleged, in his answer, that Denis McCarthy of Oneida county had commenced a suit, in the supreme court, against the tenants of Walker, to recover the possession of the mortgaged premises, as the heir at law of Denis McCarthy of New-York, deceased, which suit was still pending; that previous to the filing of the bill in this cause the defendant Walker had notified the complainants of the ejectment suit, and of the claim made by the plaintiff therein; and had requested that the said plaintiff might be made a party to the bill of foreclosure, so that the validity of his claim to the property might be investigated and determined in this suit. The defendant Walker therefore insisted that he was not bound, and ought not to be compelled to pay the amount of his bond and mortgage to Mrs. McCarthy; and that the complainants, as her representatives, were not entitled to enforce the payment

thereof, or have a decree of foreclosure and sale of the mortgaged premises, until a release of the claim of Denis McCarthy of Oneida county had been obtained, or until it should be determined, by the trial of the ejectment suit brought by him, that his claim to the premises, as an heir at law of Denis McCarthy deceased, was unfounded.

The plaintiff in the ejectment suit was examined as a witness for Walker, in this suit, and stated that he came to this country from Ireland in 1827, his father and mother then being dead, and his two brothers and eight sisters then residing in Ireland; that he was naturalized in the court of common pleas of Saratoga county in 1834; and that from recent information which he had obtained from the letters of aged people in Ireland he believed his grandfather, or father, was a cousin of the late Denis McCarthy of New-York. A copy of the record of his naturalization in Saratoga county was also read upon the hearing, and also the deed from Master Emmet and Mrs. McCarthy to Walker; the recitals in which deed, as the counsel for the appellant insisted, were evidence of false representations made by her that the heirs at law of her deceased husband were all aliens. But no evidence whatever was given that she was aware, or had any reason to believe, that any relatives whatever of her deceased husband had come to this country and been naturalized previous to his death. Nor was there any evidence that she was present at the master's sale, or made any representations whatever to the defendant Walker, at or previous to the sale, relative to the validity of the title to the premises which were about to be sold.

The vice chancellor, upon the hearing of the cause, made the usual decree for the foreclosure of the mortgage and a sale of the mortgaged premises, to satisfy the amount due and the costs of the suit; and the usual decree over against the mortgagor for the payment of the deficiency, if any, upon the coming in and confirmation of the master's report.

*J. R. Whiting & R. Lockwood*, for the appellant. The deed to Walker, and the bond and mortgage executed by him

Banks *v.* Walker.

to Mrs. McCarthy to secure the balance of the purchase money, were all executed upon a mistake of fact—at the least as to the recital in the deed "that Denis McCarthy died leaving several persons his heirs at law him surviving—all of which persons were aliens, not naturalized or authorized to hold real estate within the state of New-York, &c. by means whereof the said lot, piece, &c. escheated to the people of the state of New-York subject to the dower of the said Elizabeth." The answer and proofs now show that an heir at law, naturalized and capable of holding real estate, did exist at the death of the testator. Mrs. McCarthy was bound by this recital. If untrue, although she did not know it to be so, she is nevertheless responsible, however innocent. (*Champlin* v. *Laytin*, 6 *Paige*, 189. 18 *Wend.* 407, *S. C.*) The action of ejectment, being brought to the notice of the executors, it was their duty to defend it, if they wished to preserve their lien on the lands. If the defendant be evicted, he will clearly be entitled to relief against the mortgage, if it remain unpaid. The contract is still *executory*, and therefore if the defendant show a case in which the court would refuse a decree for specific performance, he is entitled to the same equitable protection of the court as if a bill were filed against him for a specific performance of a contract of purchase. On a bill for such a specific performance there cannot be a doubt that he would be relieved against his purchase. At all events, the bill would be retained until the title of the vendor was fully established in the suit at law. There is no case to be found where a court of equity has compelled a purchaser to complete a purchase, where an ejectment, even upon mere colorable grounds, was subsequently commenced to recover the land under title paramount. Here we have the expense of defending the suit, and the risk besides, and the case is still stronger in our favor. The case of a mortgagor liable to be so evicted, when the recitals in the deed have misled him, and have been the foundation of his purchase, becomes the case also of the party who has received his money, and that party is equally bound in equity to await the issue of the contest as to the balance due. The court ought to interfere to protect the

---
Banks v. Walker.
---

defendant here, as a mere matter of discretion and indulgence. The court has a right to delay a decree, under circumstances like those here presented, as long as the equity of the case may require. The complainants can suffer no possible injury if their title be good. (*Abbott* v. *Allen*, 2 *John. Ch. Rep.* 519. 3 *Powell on Mort.* 993, 9. *Johnson* v. *Gere*, 2 *John. Ch. Rep.* 546. *Gillespie* v. *Moon*, 2 *Idem*, 585.) The complainants are not vendors seeking a foreclosure against a vendee guilty of negligence, of mistake of law, or of any other omission or act, upon which courts of equity have refused relief to mortgagors upon bills for foreclosure.

*W. S. Sears*, for the respondents. The mortgage to Joanna Bant having been paid off ought to be decreed to be satisfied of record by the defendant Christopher Bant, the administrator of Joanna Bant. The premises should be sold free and discharged from the mortgage to Mrs. Joanna Bant. The defendant has failed to prove his defence set up in answer. The complainant's right to the money secured by the mortgage is determined by the decree ; and the defendant appeals only from so much of the decree as directs the mortgaged premises to be sold. The court will not, after the rights of the parties have been determined by the decree, reverse that part of the decree by which the complainants are to have the benefit of the judgment of the court. That part of the decree of the assistant vice chancellor which is appealed from should be affirmed, and the complainants permitted to proceed under the decree and sell the mortgaged premises.

THE CHANCELLOR. The first and most important question in this case, admitting that the plaintiff in the ejectment suit was duly naturalized in 1834, and that he sustained the relationship which he supposes he did to Denis McCarthy deceased, is whether he could take real property by descent from the decedent, under the provisions of the revised statutes ; the parents of Denis McCarthy deceased never having been citizens of the United States.

It is a well known principle of the common law that an alien can neither himself inherit lands from a person who is not an alien, nor can he transmit lands by descent to any other person. Nor by the common law could a natural born subject or citizen transmit lands by descent to another, mediately, through the blood of an alien. Thus in the case of grandfather, father and son, if the father was an alien, whether he was or was not living at the time of the descent cast, the grandfather could not transmit lands by descent to his grandson; although both of them were natural born subjects or citizens, or had been duly naturalized. But if the person who died seised of real estate had inheritable blood, such real estate would descend to his next heir who had such inheritable blood; although the person who would otherwise have been the heir of the decedent was an alien. Thus if the deceased had two sons, and the eldest was an alien and the youngest was a natural born subject or citizen, the alienage of the eldest son, who otherwise would have been the heir at law of his father, would not prevent the real estate of the father from descending to the youngest son, as heir at law. These principles of the common law are admitted by all the English judges who delivered opinions in the important case of *Collingwood* v. *Pace*, in the exchequer chamber, in May, 1664. (1 *Vent. Rep.* 413. *O. Bridgman's Rep.* 414. 1 *Sid. Rep.* 194. 1 *Keble*, 579, 581, 485, 588, 603, 605, 670, 671, 699, 705.) The only question upon which Sir Orlando Bridgman and two other judges differed with Lord Chief Baron Hale and the six other judges was, whether the descent from one brother to another was immediate, or was only through their father who was an alien. The opinion of the lord chief baron prevailed in that case, and upon that question; so that it became the settled law in England that the alienage or attainder of the father did not prevent one of his sons from inheriting directly from another. Lord Hale, however, in his opinion, as reported at length by Ventris, says the descent between brothers differs from all other collateral descents whatsoever, and is immediate; and to entitle them to inherit from each other they must be of the whole blood. That the uncle is preferred in descent before the brother of the

half blood, because that is a mediate descent, *mediante patre.* (1 *Vent.* 424.)

This disability of natural born or naturalized subjects to inherit from each other, where they were obliged to trace their pedigree or relationship through the blood of an alien, was removed, however, in England, by the statute 11 and 12 William 3, chapter 6. (1 *Evans' Stat.* 228.) But that statute, as it was decided by the court for the correction of errors in the case of *Jackson* v. *Fitz Simmons*, (10 *Wend. Rep.* 9,) was never in force in this state. And the question now arises, whether the twenty-second section, of the chapter of the revised statutes relative to the descent of real property, is broad enough to cover the case now under consideration. That section provides that no person capable of inheriting under the provisions of that chapter shall be precluded from such inheritance by reason of the alienism of any ancestor of such person. (1 *R. S.* 754.) This unquestionably removed the disability arising from the alienism of the father and grandfather of Denis McCarthy of Oneida county, the plaintiff in the ejectment suit which has been brought for the recovery of the mortgaged premises. But to enable him to trace his pedigree and consanguinity as collateral heir to Denis McCarthy, the decedent, who died seised of the mortgaged premises, he must trace it mediately through the blood of the father of the latter, an alien; and who was not an *ancestor* of the person who is now claiming to be the heir at law of the decedent. Thus in the case of Edward Courtenay, great grandson of Edward the 4th, and whose father and grandfather had been attainted of treason, it was held that previous to the act restoring him in blood, his second and third cousins, the descendants of his four great aunts, who were his next of kin of the blood of his father and grandfather, could not have inherited from him; because they would have been compelled to trace their pedigree and relationship to him through the attainted blood of his father and grandfather. (3 *Coke's Inst.* 241.)

I am aware that the term *collateral ancestors* is sometimes used to designate uncles and aunts, and other collateral antecessors of the person spoken of; who are not in fact his an-

cestors. But the word *ancestors*, in its ordinary import and meaning, only includes those from whom the person spoken of is lineally descended, either on the father's or the mother's side. And whenever this word is intended to be used in a sense which is different from its ordinary import of lineal ascendants, or in such enlarged sense of antecessors, so as to embrace all the blood relatives of the person referred to who have preceded him, it is qualified, or enlarged, by some other term ; to show that it is not used in its natural sense merely. Thus in the act of October, 1553, which restored in blood the son of Henry Court-enay, the attainted Marquis of Exeter, he is restored in blood as well as son and heir to his father the Marquis, as to all and every other *collateral and lineal* ancestor. The term ancestor is enlarged in the same way in the statute 11 and 12 William 3, ch. 6, before referred to. And there are also other words used in the statute last referred to, showing clearly the intention of the lawmakers to remove the disability arising not only from the alien blood of the ancestors of the person claiming to be entitled to real estate by descent, but also from the alienage of the ancestors of the deceased person who was last seised of the estate. For that statute declares that all and every person or persons, being natural born subjects, shall and may lawfully inherit, *and be inheritable*, as heir or heirs, to any honors, manors, lands, tenements or hereditaments, and may make their pedigrees and titles by descent from any of their ancestors *lineal or collateral ;* although the father or mother, or other ancestor, of such person or persons, by, *from,* through or under whom he, she or they shall make or derive their title or pedigree was, is, or shall be, an alien, &c. (1 *Evan's Stat.* 229.)

The disability of blood of the ancestors of the person *from* whom the inheritance is to come, being removed, by that statute, in express terms, as well as the disability of the ancestors of the person claiming such inheritance as heir, the estate, in England, descends in the same manner as if all the ancestors, either of the deceased or of his heir at law, through whom it is necessary for such heir to trace his relationship by blood to the decedent, had been natural born subjects. But as our statute only removes

Banks *v.* Walker.

only the disability of the alienism of ancestors of the person *claiming the inheritance* from the person last seised, it does not enable the claimant, in this case, to make his title and pedigree mediately through the alien blood of the father of Denis McCarthy the decedent, who was not an ancestor of such claimant.

Again ; I have *doubts* whether the alleged naturalization of the claimant is not fatally defective, if the certificate produced on the argument is a correct transcript of the record of naturalization. For it appears to show, upon its face, that a declaration of intention had not been made three years before, as required by the first clause of the first section of the act of April, 1802, to establish an uniform rule of naturalization ; but that the alien had only reported his arrival in the United States; which he was not required to do, subsequent to the act of May, 1828. (4 *Story's Laws*, 2145.) The last mentioned act having repealed the first section of the act of March, 1816, which required the certificate of the declaration of intention to be re cited at full length in the record of naturalization, it is only necessary to state the fact that such previous declaration had been made. And the record of naturalization will then be conclusive evidence of the regularity of the proceedings, and that all the preliminary steps had been complied with ; provided such record does not show the contrary upon its face. But in this case I am inclined to think the record, upon its face, shows that what was supposed to be a declaration of intention under oath, was nothing but the registry of the arrival of the alien within the United States ; which was formerly required to be made, under the second section of the act of 1802, before that section was repealed in May, 1828. The certificate produced upon the hearing before me is in such an imperfect form, however, that it is difficult to say precisely what did form the record of naturalization. For that reason I do not intend to express any definite opinion upon the question as to the validity of the naturalization of the claimant. If, as I suppose, however, it is clearly inferable from the record of naturalization that the alien had not, at least three years before his admission by the court of common pleas in Saratoga county, declared on oath his in-.

tention to become a citizen of the United States, and to re-
nounce all allegiance to any foreign prince or sovereignty, and
particularly to the king of Great Britain, by name, as required
by the act of 1802; but that the court had mistaken the regis-
try of the arrival of the alien in the United States for such dec-
laration of intention, I think the naturalization is invalid. If the
record upon its face is valid, however, it is conclusive as to the
regularity of the proceedings, and of the naturalization of the
alien; and such record cannot be contradicted by extrinsic proof
that no such declaration of intention had in fact been made.

But even if the plaintiff in the ejectment suit was duly nat-
uralized, and could claim as heir at law of Denis McCarthy
the decedent, through the alien blood of the father of the latter,
it formed no valid defence to this foreclosure suit. For the de-
fendant Walker wholly failed in establishing the allegation in
his answer, that Mrs. McCarthy falsely and fraudulently repre-
sented to him, at or before the sale, that all the heirs at law of
her deceased husband were aliens at the time of his death; so
that his real estate had escheated. Even if she had made rep-
resentations of that kind to him, the fact that she had made
them in her petition to the legislature, affords presumptive evi-
dence that she really believed such to be the case ; and there
is no proof to the contrary. Nor is there any evidence that she
ever saw or spoke to the appellant, at or before the master's
sale, or that she had any communication whatever, written
or oral, with him. His bid upon the property at such sale
could not have been affected by the formal recitals contained
in a deed which was given some weeks afterwards. And as
the property was sold without warranty, the purchaser took the
same at his own risk. He cannot therefore refuse to pay the
share of the purchase money which belonged to Mrs. McCar-
thy merely because the interest which he supposed he was
acquiring in the property failed in part ; and while he contin-
ues to possess and enjoy the property under his purchase.

Here the title to the property did not wholly fail, in conse-
quence of a mutual mistake of all parties upon a matter of fact.
For Mrs. McCarthy, in any event, was entitled to a life estate

in one third of the property; for her dower interest therein. And if the appellant was not willing to run the risk as to the residue of the title, which was supposed to have been acquired under the release from the commissioners of the land office, he should have insisted upon covenants of warranty. Or, rather, he should not have bidden thereon at the sale; as it is fairly to be inferred from the case that the master put up the property and sold it at the risk of the purchaser as to the title. For it is not to be supposed the master would warrant the title to property in which he had no interest; or that Mrs. McCarthy would warrant it, for the purpose of enhancing the amount of the purchase money for the benefit of Mrs. Bant, who was entitled to the half thereof. Her own interest in the proceeds of the sale she could protect, without running that risk as to Mrs. Bant's share, by bidding in the property herself, if it was likely to be sold under what she supposed its real value to a purchaser who assumed the risk of the title; as she was authorized to do so under the order of the vice chancellor who directed the sale.

The objection in the answer that the plaintiff in the eject-ment suit should have been made a party to this bill of fore-closure, so that his claim to the property might have been set-tled and determined in this suit, was wholly untenable. For as he claimed adversely to the complainants, as well as to the mortgagor, and by a title which, if valid, was paramount to both, the validity of his claim could not have been litigated in this suit. And if he had been made a party defendant he might have demurred for want of equity as to him. The defence set up in the answer, therefore, entirely failed, and the decree ap-pealed from must be affirmed, with costs.