White *v.* Seaver.

Judgment reversed.

[DUTCHESS GENERAL TERM, April 14, 1857. *S. B. Strong, Birdseye* and *Emott,* Justices.]

———————•◦◦•———————

## W. A. WHITE and I. WHITE *vs.* SEAVER.

Where the defendant falsely represented to the plaintiffs that he had a written contract with B. for the premises on which he, the defendant, resided, and that he had full control of the dam and water-privilege, and thereby induced the plaintiffs to enter into an agreement with him for the purchase of the premises and water-power, when in fact the defendant had no such contract with B., and no such control; *Held* that an action would lie, under such circumstances, to recover damages for such false representations, if the plaintiffs were themselves free from fault; and had no means of ascertaining the falsity of the representations.

White *v.* Seaver.

But a purchaser is bound to exercise ordinary prudence and discretion; and if the means of knowledge, respecting the title, are within his power, and he neglects to make the proper inquiry, he loses his remedy against the vendor, for any fraudulent representations the latter may make.

Thus, where the purchasers knew that the title to the premises they had agreed to purchase was to come from B., a third person, and although the latter resided near them, they neglected to inquire of him, as to the nature, and extent, of the vendor's rights in the property; or to insist upon the production of the contract which the vendor claimed to hold, for the purchase thereof, from B.; *it was held* that no action would lie against the vendor, for fraudulent representations respecting his rights in the premises.

*It seems* a justice of the peace has no jurisdiction of an action to recover damages, for fraud in the sale and purchase of real property.

THIS was an action originally brought in a justice's court of Saratoga county. The complaint averred that the defendant, in the month of April, 1853, falsely and fraudulently represented to the plaintiff that he had a written contract with Ely Beecher for the premises on which the defendant then resided, including a certain dam and other appurtenances for supplying water to the shop, on said premises, to carry a wheel for machinery purposes, and that he had full control of said dam and the water, and that said contract secured to him a warranty deed thereof; that the plaintiffs were induced by such representations, which were to the knowledge of the defendant false, to enter into and execute with the defendant, at a great price, a contract for the purchase of said premises, and to pay to him $100; and that they otherwise sustained great damage and loss.

The defendant, in his answer, after a general denial, averred that the money mentioned in the complaint was paid to apply on a contract in writing, dated April 6, 1853, between the parties, for the purchase by the plaintiffs of the house and lot whereon the defendant resided, and certain lumber and tools. That the plaintiffs wholly failed to perform said contract, on their part; and that the defendant had sustained damages on account thereof, to the amount claimed by the plaintiffs. On the trial, the plaintiffs introduced as a witness *Joseph Covell*, who testified that he drew the written contracts between the parties, on the 6th day of April, 1853. The parties came, on that day, to his house, together, and the defendant said he had been selling his place

White *v.* Seaver.

to the plaintiffs, and wanted the witness to draw the writings. The witness asked the defendant if he had a written contract with Beecher; he answered that he had, and that it entitled him to a warranty deed. The witness asked him if he had it with him; he said he had not. The witness asked him what was included in the contract. He said, his house, barn, shop, water privilege, and about an acre of land. The water privilege he described as a privilege for carrying his shop works, and which he used to carry his machinery. This testimony was objected to by the defendant's counsel, on the grounds : 1. That whatever the defendant said to the witness, by way of answers to his questions, after the agreement to sell was made, was improper evidence, as it produced no impression on the plaintiffs. 2. That it was immaterial, and irrelevant. The justice overruled the objections, and received the evidence. The witness stated that he then drew up the contracts, which were signed and executed by the parties, and left with him for safe keeping. On the 19th of May following, the parties, with the witness, met at Beecher's house to close the matter. The defendant and Beecher were to look over, and ascertain how much was due Beecher, and the plaintiffs were to pay off Beecher and the defendant and take their title. The defendant then said there was no written agreement between him and Beecher; only a verbal understanding in regard to the premises, which was not for a full deed of the water privilege, but only for carrying on the wagon making business and a turning lathe; and that he was to be precluded from any thing else. There was a writing present, which stated those facts, and the defendant said that was the agreement. One of the plaintiffs said, "that is not such a deed as you told us we were entitled to ; you told us you were to have a full deed of the water privilege, and we shall accept no other." The defendant said, "you can have such a deed as I was to have." The defendant reserved the lumber and tools specified in the contract, and the plaintiffs were to have all the rest of the defendant's lumber lying at different places ; some on the premises ; some at the mill ; and some at the river. The plaintiffs were to occupy the shop with the defendant until the first of June. The

witness had seen the plaintiffs at work in the shop. The plaintiffs further proved that while the parties were negotiating, at the defendant's shop, for the purchase and sale of the premises, before the contracts were drawn up, the defendant said he had the best water privilege there was on the stream, for carrying on his shop and carrying his machinery; said he had full control of the creek. The defendant told the plaintiffs, both before and after the contracts were drawn and executed, that he had full control of the creek. The plaintiffs, after the contracts were executed, used some of the lumber which they agreed to purchase of the defendant. The plaintiffs also proved that previous to the 20th of May, 1853, they paid, for, and to, the defendant, on the contract, the sum of $84.87. A witness was asked by the plaintiffs' counsel, from his knowledge of the circumstances, what would be the damage to the plaintiffs, in not receiving the premises according to the representations, and the contract. The question was objected to, on the grounds that the plaintiffs had not shown a performance of the contract, on their part; that they had shown no fraud; that they had not shown that the defendant had not performed his contract; that the witness had not shown himself competent to answer the question; and that it was not the proper way of proving damages. The justice overruled the objections, and the witness testified that he should think the damages were $150. The premises were proved to be worth $950.

*Ely Beecher*, being called by the plaintiffs, testified that he was present when the parties met at his house, on the 19th of May. They talked over the contract, and agreed to meet the next day, to finish up the contract. The witness did not recollect that the defendant offered to give a deed, that day; but he (the witness) afterwards told the plaintiffs he would give them the whole right to the creek, the same as they claimed the defendant had agreed to do. One of the plaintiffs said, "I will give you $800 but will give you no more." The plaintiffs did not come, on the 20th, prepared to pay up, as they had agreed to do. The defendant, by a verbal contract with the witness, had a right to use all the water he wanted to carry on the wagon

White *v.* Seaver.

making business. He had paid some, on the contract with the witness, but not as much as the interest. There was over $200 due him. There was a writing drawn, between the witness and the defendant, but it was never executed. He agreed to take $300 of the plaintiffs and settle with the defendant; and agreed to give the plaintiffs all they claimed of the defendant, at the same price.

The plaintiffs rested, and the defendants moved for a nonsuit, on the grounds : 1. That by the plaintiffs' own showing, the defendant and Beecher were ready, on the 20th of May, 1853, to fulfill the contract made by the defendant on the 6th of April previous. 2. That the evidence did not show that the plaintiffs had performed their part of the contract on the 20th of May ; nor that they had ever demanded a deed. 3. That the plaintiffs had not made out any cause of action.

The motion for a nonsuit was denied, and no further evidence having been offered, the justice rendered a judgment in favor of the plaintiffs for $86.60, with $5 costs of suit. The county court affirmed the judgment, and the defendant appealed to this court.

*W. T. Odell*, for the plaintiffs.

*W. Gleason*, for the defendant.

*By the Court*, C. L. ALLEN, P. J. The complaint is for fraud, and not for breach of contract. No contract is set forth, and the plaintiffs did not, and do not, claim to recover for such breach, but on the ground of the fraudulent representations made by the defendant, which induced the plaintiffs to enter into the contract. The allegation is that the defendants falsely represented to the plaintiffs that he had a written contract with Ely Beecher, for the premises on which he resided, and that he had full control of the dam and water privilege, when he had no such contract and no such control. The case of *Whitney* v. *Allaire*, (1 *Comst.* 305,) decides that where one conveys or leases to another his right in real estate, an action will lie for

a fraudulent representation as to the territorial extent of such right. It is said by the defendant's counsel that the point involved here was not before the court; that the question was, as to the *extent* of the demised premises, and not as to the title. It is true that the defendant in this case did not claim to *own* the premises in question, but he did claim that he had a *written* contract with Beecher, which entitled him on certain conditions to a full conveyance. And he agreed to transfer to the plaintiffs his right to that conveyance, on their complying with the terms of the agreement on his part, which they engaged to do. The case therefore seems to me to come directly within that of *Whitney* v. *Allaire,* and also that of *Monell* v. *Colden,* (13 *John.* 402,) cited by Judge Gardner in his opinion, where the representation was that the vendor, as riparian owner, had the preemptive right to a grant of land under water in the Hudson river, and opposite the purchased premises. (*See the other cases cited by Judge Gardner.*)

The action is to recover damages, for fraud in the sale and purchase of real property, and is not, therefore, within subdivision 9 of section 53 of the code, defining the jurisdiction of justices of the peace. Not being for a breach of contract, as already observed, it does not come within the 1st subdivision of that section, and it may be doubted whether, if the objection had been taken before the justice, he could have entertained jurisdiction of the action. It is now raised specifically, for the first time, here. No answer of title was interposed. The justice's attention should, however, have been called to it on the trial. (*Browne* v. *Scofield,* 8 *Barb.* 239.) It is true that the plaintiffs agreed to purchase certain articles of personal property of the defendant, as well as the premises and water privilege; but the complaint confines the demand for damages occasioned by the inducement to purchase the real estate, and not for any personal property. Clearly, then, it was an action for fraud in relation to *real estate.* The parties treated it as such. The plaintiffs claimed it to be such, and they cannot change its character now. (16 *Barb.* 633, 642.) Indeed they now view it as an action for fraud, in their points presented to

White *v.* Seaver.

the court. But if the action should be viewed as an action for fraud in respect to the execution of the contract, it then becomes necessary to examine further whether the plaintiffs entitled themselves to recover.

If I understand aright the claim of the plaintiffs, it is grounded upon a rescission of the contract by reason of the fraud, and for damages sustained by them, by reason of the fraud. It has been repeatedly decided that where a party has been defrauded in the purchase or sale of real property, he may rescind the contract, so as to restore the parties to the same situation they were in when the contract was made, *or he may affirm it,* so far as it has been executed, and claim a compensation for the fraud. If he has received a conveyance, he must re-convey, or offer to re-convey, or he cannot rescind. (*Bradley* v. *Bosley,* 1 *Barb. Ch. Rep.* 125. *Moyer* v. *Shoemaker,* 5 *Barb.* 319.) And the same is true as to personal property. (4 *Denio.* 51, 54. 2 *Hill,* 288, 294. 5 *id.* 390. 3 *Sandf.* 174. 14 *Barb.* 594.) It is perfectly evident that the plaintiffs here did not undertake to affirm the contract. They did not return to Beecher's on the 20th of May, the day fixed upon for the final completion of it. They never offered to perform or complete it, on their part, notwithstanding Beecher swears that he told them he would give them just such a conveyance for the water privilege, as the defendant had contracted to give. This they refused, and placed themselves on their right to rescind. It is in evidence that they used some of the lumber of the defendant, which they purchased under the contract; which they did not return, or offer to return, or make good. This objection, however, was not taken, before the justice, where it might have been obviated; and I do not think the defendant can avail himself of it here.

It is insisted by the defendant that an action cannot be maintained for misrepresentations made by a vendor, as to the character of his title, and the cases of *Tallman* v. *Greene,* (3 *Sand.* 437,) and *Leonard* v. *Pitney,* (5 *Wend.* 30,) are cited in support of the position. I have already remarked that the case of *Whitney* v. *Allaire* decides differently. Bronson, J., who dis-

White *v.* Seaver.

sented from the opinion of the court, in that case, cites *Leonard* v. *Pitney*, in support of his opinion, but he was overruled by a majority of the court, and the law was pronounced to be otherwise.

It is further insisted, that to render the defendants liable, the representations must not only be fraudulent, but of such a character that the purchaser had no means of ascertaining their falsity. That the plaintiffs were bound to exercise ordinary prudence and discretion to guard against the fraud. I think there is force in this argument, and that it is to some extent, at least, supported by authority. The means of knowledge were all perfectly within the power of the plaintiffs. The defendant did not claim to *own* the premises. The plaintiffs knew that their title must come from Beecher. He resided near them, and they had only to inquire of him, as to the nature and extent of the defendant's rights which they were contemplating to purchase. They called him as a witness, on the trial. Why did they not call upon him before they executed the contract, and ascertain all the facts in relation to the premises? It seems there was a written contract between the defendant and Beecher drawn up, but it had never been executed. It appears to me that ordinary care and prudence required of them to make these inquiries of Beecher, and that, having neglected to do so, they do not come with a very good grace to ask of the defendant to respond to them in damages. (3 *Sand.* 447, 440.)

The defendant moved for a nonsuit, on the ground that the plaintiffs had not made out a cause of action, and I think on this ground, the motion should have been granted.

The judgment must be reversed.

[CLINTON GENERAL TERM, May 5, 1857. *C. L. Allen, James* and *Rosekrans,* Justices.]