GEORGE W. RIGGS et al., Respondents, *v.* JAMES PURSELL et al., MICHAEL GROSZ et al., Purchasers, Appellants.

A purchaser at a mortgage foreclosure sale will not be relieved on account of apparent defects in the property, or of defects in the title of which he had notice, and in reference to which he made his bid.

Immaterial defects and merely technical objections will not defeat the sale. The court will not permit the purchaser to avoid his contract without seeing that the object of the purchase is defeated and that it would be injurious to him to enforce the contract. If he gets substantially what he contracted for, he must complete the purchase.

Where a mortgage is of a leasehold interest, and in the notice of sale under judgment of foreclosure the lease is referred to, a purchaser is chargeable with knowledge of the contents of the lease, and is supposed to have made his bid in view of its provisions.

A lease contained a covenant on the part of the lessee that he would not, during the term, assign, transfer or set over the lease or the term thereby created. A purchaser at a sale upon foreclosure of a mortgage given by the lessee upon the leasehold interest claimed that this covenant had been violated by giving the mortgage, and the lease thereby forfeited. It appeared that the lessors made no objection and were willing to assent if it was required. There was no proof that they had declared or claimed a forfeiture or that the purchaser had applied for their assent. They had received rents after the giving the mortgage with knowledge thereof. The mortgage was given two years before the sale, which was publicly advertised. *Held,* that under the circumstances there was no forfeiture.

*It seems,* that the giving of the mortgage was not a violation of the covenant, as it was not a transfer of the title or possession; nor was the foreclosure sale a breach, as it was a sale *in invitum.*

The lease contained a covenant that the lessee would, within two years from the commencement of the term, erect buildings on a portion of the demised premises worth at least $75,000, which was not done. This was known to the purchaser at the time of the purchase. The lessors, knowing the facts, had sued to recover rent without claiming for

feiture, and it did not appear that they had ever claimed any forfeiture; it appeared by affidavits on part of plaintiffs that the purchasers were aware that the lessors were willing to extend the time, and had so extended it. *Held*, that no forfeiture on this account appeared; and that it did not defeat the sale.

Parties formerly owning the leased lands and other lands on both sides of Twenty-second street entered into an agreement that the buildings thereafter erected thereon, fronting on said street, should be placed back seven feet six inches from the street, so as to have a court-yard in front of the premises, and the houses had been built in conformity to the agreement, including one on that portion of the leasehold premises affected. There was no proof or allegation that this agreement diminished the value of the premises. *Held* (Miller, J., dissenting), that while this agreement was in one sense an incumbrance upon the premises, it could not be assumed without proof that it injuriously affected their value; and as it was manifest that the purchasers would have bid the same had they known of the agreement, it was an immaterial defect, which the court would disregard.

In the said agreement was a covenant that the owners should not permit to be erected or carried on upon their respective premises any building or business generally classed as nuisances or dangerous or offensive. A similar covenant of the lessee was contained in the lease. *Held*, that the covenant in the agreement was for the benefit of all the lots, and it could not be inferred that it injured the value of any of them; and as essentially the same covenant was in the lease, this was no ground for relief.

(Argued April 15, 1876; decided May 23, 1876.)

Appeal by Michael Grosz and Frederick H. Grosz, purchasers at a foreclosure sale herein, from an order of the General Term of the Supreme Court in the first judicial department affirming an order of Special Term requiring them to complete their purchase.

This action was brought to foreclose a mortgage executed by defendant, James Pursell, upon a leasehold interest in premises in the city of New York, at the south-easterly corner of Broadway and Twenty-second street.

The notice of sale and the terms of sale signed by the purchasers described the premises as leasehold premises, and referred to the lease, giving the parties, date and time and place of recording. The lease under which the mortgagor

held was for twenty-one years from May 1, 1868; it contained covenants, on his part, that he would not, at any time during the time, "assign, transfer or set over this lease, or any of the term or time therein, unto any person or persons whomsoever, without the consent, in writing," of the lessors; that, on or before May 1, 1869, he, his heirs, etc., "would commence the erection of new buildings on said premises, to cost and be worth, at least, the sum of $75,000, and which shall be completed and finished within two years from the commencement of the demised term, and which shall cover the entire front on Broadway;" also, "that neither he nor they shall at any time hereafter, during the term hereby granted, erect, make, establish or carry on, or cause or suffer to be erected, made, established or carried on, in any manner, on any part of the said demised premises, any stable, school-house, municipal fire-engine house, tenement or community-house, or any kind of manufactory, or any trade or business generally classed as nuisances." It also appeared that, in 1849, an agreement, under seal, was made and entered into between Philip Kearney and Alexander S. Macomb and wife, who then owned all the lots on both sides of Twenty-second street, between Fourth avenue and Broadway, which stated that the parties, deeming it to be for their mutual advantage that the lots fronting on Twenty-second street should be used exclusively for dwelling-houses, and that the fronts of such dwelling-houses should be placed back seven feet six inches from the line of the street, and the parties, therefore, mutually agreed that so much of their respective lots as was "contained between the line of the streets and a line seven feet six inches therefrom shall forever hereafter remain and be enjoyed as a court-yard in front of any houses to be erected on said lots." The said agreement also contained this clause: "And the parties, for themselves and their respective heirs and assigns, mutually covenant and agree, to and with each other, that neither they nor their respective heirs or assigns shall or will erect or carry on, or permit to be erected or carried on, upon any part of their said

respective lots, any slaughter-house, smith's shop, furnace, steam engine, brass foundry, nail or other iron factory, or any manufactory of gunpowder, glue, varnish, vitriol, ink or turpentine, or for the tanning, dressing or preparing skins, hides or leather, or any brewery, distillery, or any other noxious or dangerous trade or business."

It appeared that, after the commencement of the term under the lease, an action was commenced against the lessors and the lessee, and an injunction obtained restraining the erection of a building upon any portion of the premises within seven feet six inches of the line of Twenty-second street, and, in consequence, the time for erecting the building provided for in the lease was extended.

The purchasers raised the following objections, among others, to the title :

" 1. The mortgaged premises were, prior to the making of the mortgage mentioned in the judgment in this action, and still are, incumbered by reason of the provision contained in an agreement made between Philip Kearney and Alexander S. Macomb and wife, dated May 12, 1849, to the effect that so much of said premises as is contained between the southerly line of Twenty-second street and a line seven feet six inches therefrom, shall forever remain and be enjoyed as a court-yard in front of any houses to be erected on said premises.

" 3. The lessee assigned, transferred and set over the said lease and term by making the mortgage, for the foreclosure of which this action was brought, without the consent of the lessors, in violation of the covenant and provision in that behalf contained in said lease, and thereby the said lease, and the estate of the lessee in and to the said premises, had been, prior to the sale, and were at that time, and now are, forfeited and lost.

" 4. The lessee did not commence, nor did he finish or complete, new buildings on said premises, in accordance with his covenant in that behalf in said lease, nor has he commenced, finished or completed any new buildings on said premises in accordance therewith, and that thereby the said lease, and the

estate of the lessee in and to the said premises, had been, prior to the sale, and were at that time, and now are, forfeited and lost.

" 5. The said premises are incumbered by reason of the cove-nant or provision contained in the said agreement between Philip Kearney and Alexander S. Macomb and wife, to the effect that there shall not be carried on upon any part of said premises any slaughter-house, smith's shop, furnace, steam engine, brass foundry, nail or other iron factory, or any manu-factory of gunpowder, glue, varnish, vitriol, ink or turpen-tine, or for the tanning or dressing or preparing skins, hides or leather, or any brewery, distillery, or any other noxious or dangerous trade or business."

Further facts, pertinent to the objections, appear in the opinions.

*Charles Jones* for the appellants. The lease and the lessee's interest in the premises were forfeited by the mortgage which was executed without the written consent of any of the lessors, and the receipt of the rent, while ignorant of the forfeiture, was not a waiver of it, (*Jackson* v. *Bronson*, 7 J. R., 227, 234; *Clark* v. *Cumming*, 5 Barb., 339, 359; *Ire-land* v. *Nichols*, 46 N. Y., 413; *Jackson* v. *Schutz*, 18 J. R., 174; *Bleecker* v. *Smith*, 13 Wend., 530.) The purchasers had a right to insist upon a good title. (*Seaman* v. *Hicks*, 8 Paige, 655; *Burwell* v. *Jackson*, 9 N. Y., 539; *Boyd* v. *Schlessinger*, 59 id., 301; *Veeder* v. *Fonda*, 3 Paige, 94; *Rogers* v. *McLean*, 10 Abb., 306). The title a purchaser is bound to accept must not only be good, but marketable. (Atkinson on Tit., 2, 369; 4 Law Lib. [N. S.], 1163; *Low* v. *Lent*, 14 Ves., 548; *Franklin* v. *Ld. Brownson*, id., 555; *Bklyn. Park Comrs.* v. *Armstrong*, 45 N. Y., 234.)

*Jno. E. Parsons* for the respondents. The purchasers having bought with full knowledge of the situation of the premises, cannot refuse, on account of the situation, to com-plete their purchase. (*Craddock* v. *Shirley*, 3 A. K. Marsh.

288; *Williamson* v. *Raney*, 1 Freem. Ch., 112 ; *Tompkins* v. *Hyatt*, 28 N. Y., 347 ; *White* v. *Seaver*, 25 Barb., 235 ; *Winne* v. *Reynolds*, 6 Paige, 407 ; *Kiny* v. *Bardeau*, 6 J. Ch., 38 ; *Banks* v. *Walker*, 3 Barb. Ch., 438 ; *Maxwell* v. *East River Bk.*, 3 Bosw., 124.) Notice to the purchaser of the lease was notice of its contents. (*Hall* v. *Smith*, 14 Ves., 426 ; *Taylor* v. *Stibbert*, 2 id., 437 ; *Daniels* v. *Derison*, 16 id., 249 ; *Smith* v. *Law*, 1 Atk., 489; *Allen* v. *Anthony*, 1 Morin, 262 ; *Chesterman* v. *Gardner*, 5 J. Ch., 29.) Knowledge sufficient to put upon inquiry is equivalent to a notice to a purchaser. (*Pitney* v. *Leonard*, 1 Paige, 461 ; *Pendleton* v. *Foy*, 2 id., 202 ; 1 Atk., 489; *Green* v. *Slayter*, 4 J. Ch., 38 ; *Darell* v. *Hally*, 1 Paige, 492 ; *Holbrook* v. *Wix*, 1 E. D. S., 154.) The purchasers had knowledge sufficient to put them upon inquiry as to the terms and conditions of the lease. (Sugd. on Vendors, 552 ; 4 Kent's Com., 172 ; 4 Sandf., 577 ; 8 N. Y., 277 ; 1 Story's Eq. Jur., § 398 ; 10 J. R., 461 ; 15 id., 568 ; 8 id., 137 ; 3 Ves., 478 ; *Williamson* v. *Brown*, 15 N. Y., 354 ; 2 Paige, 200 ; *Gilbert* v. *Peteler*, 38 N. Y., 165.)

Earl, J. A referee under a foreclosure decree made the sale in question. In making it he did not act as the agent of the parties, but as the officer of the court. The sale was theoretically made by the court through its officer, and the contract of the purchasers was with the court. The purchasers are entitled to all the property and title which the referee undertook to sell and which they rightfully supposed they were to receive. (*Morris* v. *Mowatt*, 2 Paige, 586 ; *Spring* v. *Sandford*, 7 id., 550 ; *Seaman* v. *Hicks*, 8 id., 655.) A purchaser upon such a sale will not be relieved on account of defects in the property or the title thereto, of which he had notice, and in reference to which he made his bid, and the court will not permit him to abandon his contract without seeing that the object of the purchase is defeated and that he would be injured by the enforcement of the contract. If every minute and critical objection to a judicial sale is suffered to prevail, it will be attended with much inconvenience and

embarrassment.  A purchaser claiming to be discharged from his contract should, therefore, make out a fair and plain case for relief; and it is not every defect in the subject sold or variation from the description that will avail him.  He will not be suffered to speculate at such sales, and, if he happens to make a bad bargain, to repudiate it and abandon his purchase on some nice but immaterial objection.  If he gets substantially what he bargains for, he must complete the purchase and take his deed; and, in some cases, the court will compel him to take a compensation for any deficiency.  The court will weigh the object and inducement of the purchaser, and, looking to the merits and substantial justice of each particular case, if the sale be fair, relieve or not from the purchase, according as the character of the transaction and circumstances may appear to require.  (1 Barb. Ch. R., 534; *King* v. *Bardeau*, 6 Johns. Ch. R., 38 ; *Weems* v. *Brewer*, 2 Har. & Gill., 390.)

This was a sale of premises held under a lease, and the lease was referred to in the notice of sale, and hence the purchasers are chargeable with knowledge of the contents thereof. They are supposed to have examined the lease and made their bid in view of its provisions; and they are also chargeable with knowledge of what was apparent and obvious upon the premises.  (*Taylor* v. *Stibbert*, 2 Ves., 437; *Hall* v. *Smith*, 14 id., 426; *King* v. *Bardeau*, *supra;* *Winne* v. *Reynolds*, 6 Paige, 407; *White* v. *Seaver*, 25 Barb., 235; *Tompkins* v. *Hyatt*, 28 N. Y., 347; *Craddock* v. *Thurley*, 3 A. K. Marsh., 288.)

The purchasers claim to be released from their purchase in this case upon several grounds, which I will consider separately, applying the principles above laid down.

1. The lease contained a covenant, on the part of the lessee, that he would not, during the term, assign, transfer or set over the lease or any of the term thereby created, and the purchasers claim that this covenant was violated and the lease forfeited by the giving of the mortgage which was foreclosed. Their objection is based upon the giving of the mortgage, not

that there was a forfeiture by the sale under the mortgage. There are several answers to this objection: in the first place, it is averred in the moving affidavit, on the part of the plaintiffs, that the purchasers were well aware that the lessees made no objection to the mortgage, on the ground that their assent was necessary, and that they were willing to give such assent if required. These allegations are not denied in any affidavit or proof, on the part of the purchasers, and hence they must be taken as true. There was no proof that the lessees had declared or claimed any forfeiture, or that they had in any way refused their assent to the mortgage, or that the purchasers have ever applied for such assent. Taking the facts that the mortgage was given and recorded more than two years before the sale, that it was foreclosed by a public proceeding in court, and that the sale under the mortgage was publicly advertised, that rent was paid after the giving of the mortgage and received by the lessors, their attorney receiving the same knowing of the mortgage, with all the other circumstances above alluded to, and it appears quite clearly that there was no forfeiture on the ground here considered. But there is a still further answer to this objection. The giving of the mortgage was not a violation of the covenant. A mortgage in this State of land is not a transfer of the legal title or the possession, but a mere security. (*Trimm* v. *Marsh*, 54 N. Y., 599.) It has been held in several cases in England that such a covenant is not violated by a delivery of the lease as a security for money loaned, and yet such a delivery operates as an equitable mortgage of the term created by the lease. (Taylor's Landlord and Tenant [2d ed.], 406 ; Platt on Leases, 258 ; *Doe* v. *Hogg,* 4 Dowl. & Ry., 226 ; *Doe* v. *Bevan,* 3 Maul. & Sel., 353,) In *Doe* v. *Hogg* there was a covenant " not to let, set, assign, transfer, set over or otherwise part with the premises demised in the lease " of a coffee-house. The lessee deposited the lease with a brewer as security for beer supplied to the house, and it was held that the covenant was not violated. ABBOTT, Ch. J., said : " I am clearly of opinion that the effect of the covenant is only to restrain the lessee

from completely alienating the legal interest in the premises to the prejudice of the landlord without his consent in writing." In *Doe* v. *Beavan* there was a similar covenant, and the lessee deposited his lease as a security for money borrowed, and became bankrupt, and the lease was sold under the direction of the chancellor to pay that debt, and it was held that the lease was not forfeited. It is, therefore, clear that this lease was not forfeited by the giving of the mortgage, which did not transfer the title to the premises or the lease. Neither was it forfeited by the sale under the decree. This was a judicial sale in a hostile proceeding, a sale *in invitum*, and such sales are held not to violate this covenant. An assignment either by the lessee or his executor which is not voluntary, but caused by operation of law, is not a breach of the covenant not to assign. Where a lessee who had so covenanted gave a warrant of attorney to confess a judgment on which the lease was taken in execution and sold, it was considered no breach of the covenant, all the proceedings being in good faith. (*Doe* v. *Carter*, 8 Term R., 57; see, also, *Jackson* v. *Corliss*, 7 Johns., 531; *Stephenson* v. *Silvernail*, 17 id., 278; *Smith* v. *Putnam*, 3 Pick., 221.) Such covenants are restraints which courts do not favor. They are construed with the utmost jealousy, and very easy modes have always been countenanced for defeating them. (*Church* v. *Brown*, 15 Ves., 265; *Blencow* v. *Bugby*, 2 W. Black., 766; Taylor's L. & T., §§ 402, 403; 2 Platt on L., 250.) This covenant, therefore, furnishes no ground for the relief of the purchasers.

2. The lease was dated in March, 1868, and contains also a covenant that the lessors would, within two years from the commencement of the term, erect buildings worth at least $75,000 covering the Broadway front of the premises. It is objected by the purchasers that these buildings were not erected, and hence that the lease was forfeited. They knew that these buildings were not erected and made their bid with such knowledge. It appears that the lessee was for a time restrained from erecting the buildings by injunction and that the lessors had extended the time for their erection. It appears

also that the lessors, knowing that the buildings had not been erected, had commenced suits to recover the rent of the premises without claiming a forfeiture. It does not appear that on this account the lessors have ever claimed any forfeiture, and the moving affidavit on the part of the plaintiffs expressly alleges that the purchasers are "aware that the lessors are willing to extend the time for the erection of buildings under said lease so as to suit their convenience, and have so extended the same," and these allegations are nowhere denied. This sale was made by the court. No fraud is imputed, and the purchasers seeking relief from the purchase must make out a plain, fair case, showing that the lease was forfeited. They should have shown it in some way by calling the lessors as witnesses, or by proving facts more potent than remote inferences.

3. In 1849, Kearney and Macomb owning all the land on both sides of Twenty-second street, between Seventh avenue and Broadway made an agreement by which they covenanted, among other things, that the buildings fronting on Twenty-second street should be placed back seven feet and six inches from the street, so as to leave a court-yard in front of the houses. The premises leased were 102 feet on Broadway, and 122 feet on Twenty-second street. The lots fronting on Broadway were not affected by this agreement. But this was a lot twenty-six feet wide most distant from Broadway, which fronted on the street, and was, therefore, subject to the agreement. The purchasers claim that this court-yard agreement was unknown to them at the time of the sale, and on that account claim to be relieved from their purchase. There is no proof and no allegation even that this agreement diminishes the value of the premises. It was made not to impose a burden upon this lot, but to enhancce the value of all the lots on the street. While the agreement requires that a court-yard shall be left in front of this lot, for the benefit of the other lots on the street, it also requires that a court-yard shall be left in front of all the other lots for the benefit of this; and all the houses on the street have been built in conform-

ity to this agreement. While this agreement may in one sense be regarded as an incumbrance upon this lot, it cannot be assumed, without proof, that it injuriously affects its value to any extent whatever. Besides, before the sale, the lessee had erected upon this lot a large and valuable building, leaving the court-yard in front thereof with flagging and iron grating therein, through which light is let into the basement of the building; and the court-yard is excavated beneath the flagging and grating, and used in connection with the building. These facts were well known to the purchasers at the time of the sale, and they bid knowing the precise condition of the premises. The proof is quite strong, also, that they knew of the court-yard agreement. But I am of opinion that the objection should be overruled, because there is no proof that the court-yard agreement in any way diminished the value of the premises and because it is manifest that the purchasers would have bid the same if they had known of the agreement. It was, therefore, an immaterial defect in the title which the court should disregard. In this respect the case is one where the purchasers got all they bargained for.

4. The lease contains a covenant that the lessee shall not, during the term, permit to be " erected, made, established or carried on on the premises any stable, school-house, municipal fire-engine houses, tenement or community-houses, or any kind of manufactory, or any trade or business generally classed as nuisances or dangerous or offensive to the neighborhood," The purchasers are charged with knowlegde of this covenant and cannot therefore complain thereof. But they claim that they did not know of the Kearney and Macomb agreement above mentioned, which contains a covenant applying to the whole of both sides of Twenty-second street, that neither party would " permit to be erected or carried on, upon any part of their said respective lots, any slaughter-house, workshop, furnace, steam engine, brass foundry, nail or other iron foundry, or any manufactory of gun-powder, glue, varnish vitrol, ink or turpentine or for the tanning, dressing or preparing skins, hides or leather or any brewery, distillery or any other noxious

or dangerous trade or business." This covenant like the one above considered, was made for the benefit of all the lots on the street, and it cannot be inferred that it diminished the value of any of them. The covenant in the lease was doubtless made to carry out the covenant in the agreement, and both covenants, in all essential features, are substantially alike. Taking into consideration the location of the premises, there is certainly no material difference between the two covenants, and it is preposterous to suppose that a person at the sale, knowing of both covenants, would have made any difference in his bid, on account of the covenant now complained of. This objection, therefore, furnishes no ground for relief.

Having thus carefully considered all the grounds upon which the purchasers seek to be relieved from their purchase, we are of opinion that the order of the Supreme Court is right, and should be affirmed.

MILLER, J. (dissenting). The agreement between Kearney and Macomb and wife reserved a strip of land, seven feet and six inches in width, along the northerly side of the lots on Twenty-second street, "to remain and be enjoyed as a court-yard in front of any houses to be erected on said lots;" and, at the time of the sale, a perpetual injunction had been granted by the Supreme Court restraining the defendants, in the action brought, from excavating or building upon the same, or using it otherwise than as a court-yard.

It is insisted that this is an incumbrance upon the premises which justified the purchasers in refusing to take title. Conceding that the purchasers were obligated to take notice of the covenants in the lease, it does not necessarily follow that they were bound by the terms of the agreement in question, without notice of its contents. It is urged that they had knowledge, and there is evidence to show that the houses on Twenty-second street were constructed on the court-yard line. This circumstance may have been the subject of observation, but it does not prove that the purchasers had knowledge that the actual title to the land was not beyond the court-yard line,

and the extent of their knowledge is by no means certain or definite. There is also proof that one of the purchasers was employed in superintending the putting down of the grating in said court-yard, but this may have been done without actual knowledge of the real situation of this portion of the premises; nor does it necessarily follow because there was a court-yard that the same was not held under the lease, without any restriction or reservation. It is also shown that one of the parties stated that he knew all about the dispute in reference to the court-yard. This is positively denied; and as evidence of declarations are always to be regarded with great caution, it is by no means satisfactorily established that the purchasers had full and accurate knowledge of the character of the conditions referred to. A serious question is therefore presented, whether, under the circumstances, the purchasers were bound to accept a conveyance; and where no notice is given by the terms of the sale, or otherwise, to direct the attention of bidders upon a sale to a condition contained in another agreement, and there is no direct proof of knowledge of such a condition, I think it cannot be fairly insisted that the purchasers had knowledge of the nature, character and extent of such restriction, and that the proof does not sufficiently establish such fact. The General Term, without disposing of the question discussed, held that, as the judgment in the case of *Clark* v. *The New York Life Insurance and Trust Company* * had been reversed, this objection must fail.

The court were clearly in error as to the decision of the Court of Appeals, as that court reaffirmed the decision of the Special Term, which held that the restriction did apply to the lot on Twenty-second street, distant ninety-six feet and one inch from Broadway. This leaves some twenty-six feet subject to the restriction, and constitutes a serious objection to the title. It clearly comes within the rule laid down, that where real estate is sold under a decree of the court, it will not compel the purchaser to complete his purchase where he will not obtain such an interest as he had a right to suppose

* 64 N. Y., 33.

from the terms of the sale he was buying when the property was struck off. (*Seaman* v. *Hicks,* 8 Paige, 655.) This rule is applicable to a sale of leasehold premises as well as the sale of a fee, and the same right exists in both cases to demand a good title to the interest agreed to be sold. (*Burwell* v. *Jackson,* 9 N. Y., 535; *Boyd* v. *Schlesinger,* 59 id., 301.)

The existence of a court-yard, without the right to build thereon, is an incumbrance, or such a defect of title as justifies the purchaser in refusing to fulfil when he has no knowledge of that fact, and can obtain none by the inspection of the lease itself; and the case of *Banks* v. *Walker* (3 Barb. Ch., 438), cited by respondents' counsel, is not antagonistic to this view of the subject. The publication of the notice of sale, referring to the lease, did not bind the purchasers to look beyond this, nor furnish sufficient knowledge to put them upon inquiry as to an instrument outside of the lease, and for this reason they are entitled to be relieved from their bid at the sale.

Upon the ground stated, and without considering the other objections urged, my opinion is that the orders of the Special and General Term should be reversed, and an order entered granting the application of the purchasers, with costs, and denying the motion of plaintiffs, with costs.

All concur with EARL, J., except CHURCH, Ch. J., not voting, and MILLER, J., dissenting. FOLGER, J., absent.

Order affirmed.