Louis UTAH, Plaintiff, *v.* FRED A. DICKINSON et al., Defendants.

Supreme Court, Trial Term, Bronx County, December 6, 1948.

*Murray H. Yachnin* and *Copal Mintz* for plaintiff.

*Stanley Green* for defendants.

DICKSTEIN, J. This is an action to recover a deposit and plaintiff's expenses on the sale of a piece of real property in Putnam County. The defendants originally counterclaimed for specific performance but the claim was withdrawn at the trial. The testimony showed that the plaintiff had entered into a contract for the purchase of a hotel and real property connected therewith fronting on Lake Mahopac. The sale included the good will of the hotel as well as its furnishings, it being the plaintiff's intention to continue the defendants' hotel business and its name " Baxter Hotel ".

The plaintiff rejected title on the claim of unmarketability. It appeared that the defendants did not have title to the land under water in front of the hotel. This would be a serious defect, especially since the hotel is situated on the lake and its business value depends on the ability of its guests to use the lake for bathing purposes. But there is nothing in the contract of sale which calls for a conveyance of land under water other than whatever right, title or interest the seller might have in same. The claim was also made that the owners' riparian rights were subject to the rights of the City of New York in connection with its water supply. None of these limitations was mentioned in the contract of sale. The question, therefore, resolves itself to the proposition as to whether these limitations or restrictions prevent the use by the plaintiff of the property as contemplated in the contract of sale.

The physical condition of the property shows that the defendants and their predecessors in title maintained a dock at the lake for approximately 100 years. It also appears that at no time during the defendants' possession of the property was there any interference with the use of the water from the lake, cutting ice therefrom, filling in some land where it was possible, and the like.

On the question of condemnation of some of the riparian rights in the lake and the use of its water in connection with the New York City water supply, the law applicable to the situation is chapter 445 of the Laws of 1877, which provides in section 18 thereof as follows: " * * * that nothing contained in this or in any existing act shall authorize or permit any water in excess of the ordinary flow thereof to be drawn from Lake Mahopac and Lake Glenida, in the town of Carmel and county of Putnam, between the first day of March and the first day of September in any year. And provided also that nothing in this or in any existing act contained shall be so construed as to interfere with any existing right to catch fish,

obtain ice, or keep, use and maintain boats in or upon any natural lake or pond which may be acquired under this act; nor shall it be so construed as to destroy any existing right of riparian owners upon such lakes and ponds to use the waters thereof, or to build upon the shores thereof, except as such rights may be affected by the raising or lowering of the waters of such lake or ponds, as hereinbefore prescribed.'' It was this statute which authorized the State to make a grant of the lands under water to the City of New York, which grant quit-claimed the right, title and interest of the State subject to the above-quoted statutory provisions.

Since the statute specifically prohibits the City of New York from drawing water from the lake between the months of March and September, the guests at the hotel will not be in any way prevented from swimming, fishing or otherwise enjoying the waters of the lake.

It is, therefore, quite obvious that the alleged limitations in the defendants' riparian rights will not hurt the plaintiff in the slightest degree and will not make his title unmarketable. The case of *Riggs* v. *Pursell* (66 N. Y. 193, 199) is still controlling in such situations and the holding in that case will bear repetition: '' A purchaser claiming to be discharged from his contract should, therefore, make out a fair and plain case for relief; and it is not every defect in the subject sold or variation from the description that will avail him. He will not be suffered to speculate at such sales, and, if he happens to make a bad bargain, to repudiate it and abandon his purchase on some nice but immaterial objection. If he gets substantially what he bargains for, he must complete the purchase and take his deed; and, in some cases, the court will compel him to take a compensation for any deficiency. The court will weigh the object and inducement of the purchaser, and, looking to the merits and substantial justice of each particular case, if the sale be fair, relieve or not from the purchase, according as the character of the transaction and circumstances may appear to require.''

The plaintiff is seeking to make capital of the fact that the City of New York paid in 1880, $154,000 to the owners of land surrounding Lake Mahopac and particularly to defendants' predecessor in title $1,050, for a 4½-acre parcel, of which the premises involved here are a part. He asks: Did the City of New York pay this money for nothing? The answer is simply that this was compensation paid for the *impairment* of the easement for water supply purposes and did not in any way

involve any diminution of the rights of the riparian owners to the beneficial enjoyment of their rights to maintain docks and use the premises for swimming or fishing. The purpose of the statute and of the condemnation proceedings was to provide compensation to riparian owners so that the proper public authorities could validly prescribe a series of regulations concerning the use of the lake and land adjacent thereto, calculated to preserve the purity of the potable water (*George* v. *Village of Chester,* 202 N. Y. 398).

It follows that the title was not unmarketable and the plaintiff cannot recover in this action.

Judgment for defendants.