## W. C. NORTON v. NEBRASKA LOAN & TRUST COM-PANY ET AL.

[FILED OCTOBER 26, 1892.]

1. **Judicial Sales:** CAVEAT EMPTOR. It is a well settled rule that the doctrine of *caveat emptor* applies to all judicial sales, subject to the qualification that the purchaser is entitled to re-lief on the ground of after-discovered mistake of material facts or fraud, where he is free from negligence. He is bound to ex-amine the title, and not rely upon statements made by the officer conducting the sale, as to its condition. If he buys without such examination, he does so at his peril, and must suffer the loss occasioned by his neglect. MAXWELL, CH. J., dissenting.

2. ———: ———: DEFECTIVE TITLE: NOTICE. A purchaser at a mortgage foreclosure sale will not be relieved from completing his purchase on account of defective title, or on the ground of there being prior incumbrances on the property, when the true condition of the title is fully set out in the pleadings and the record of the proceedings under which 'the sale was made, as he is chargeable with notice of such material facts as the records disclose.

ERROR to the district court for Butler county. Tried below before POST, J.

*S. S. McAllister,* for plaintiff in error, contending that the bidder at foreclosure sale, having acted under mistake, and on misrepresentation of the sheriff as to title, should be relieved from the performance of his bid, cited: *Paulett v. Peabody,* 3 Neb., 196; *Frasher v. Ingham,* 4 Id., 531; *Laight v. Pell,* 1 Edw. Ch. [N. Y.], 57.7; *Yates v. Little,* 6 McLean [U. S. C. C.], 511.

*Steele Bros., contra:* Court of equity will not interfere where party seeking relief is guilty of negligence. (2 Pomeroy, Eq. Jur., 839; *Young v. Morgan,* 13 Neb., 48.) Neglect of purchaser to examine records deprives him of right to relief. If he knew of the defect, or from pursuing inquiries suggested by the pleadings, or the notice of. sale, would have known it, he is not entitled to be relieved. (2 Freeman, Executions, sec. 304*k.*) Equity will not grant relief for mistakes of law. (*Smith v. Pinney,* 2 Neb., 144; *Boggs v. Hargrave,* 16 Cal., 559; *Spafford v. Janesville,* 15 Wis., 526; *Landon v. Burke,* 33 Id., 453.) The return shows the bid was unconditional, and it is conclusive. (*Johnson v. Jones,* 2 Neb., 133; *Cooper v. Sunderland,* 3 Ia., 114; *Trimble v. Longworth,* 13 O. St., 431; *Granger v. Clark,* 22 Me., 128; *Cook v. Darling,* 18 Pick. [Mass.], 393; *Lightsey v. Harris,* 20 Ala., 411; *Hill v. Kling,* 4 O., 137; *Philips v. Elwell,* 14 O. St., 240.) If the sale was conditional the return is wrong, and the bidder's remedy is against sheriff for false return. (*Angier v. Ash,* 6 Foster [N. H.], 105; *Diller v. Roberts,* 13 Serg. & R. [Pa.], 60; *Bott v. Burnell,* 11 Mass., 165; *Whitaker v. Sumner,* 7 Pick. [Mass.], 555; *Barrett v. Copeland,* 18 Vt., 69; *Wilson v. Exr. of Hurst,* 1 Pet. [U. S. C. C.], 441; *Egery v. Buchanan,* 5 Cal., 56; *Cozine v. Walter,* 55 N. Y., 304.) The rule *caveat emptor* applies in all its rigor to judicial sales. (*The Monte Allegre,* 9 Wheat. [U.S.], **616;** *Corwin v. Benham,* 2 O. St., 36; *Owsley v. Smith,* **14 Mo.,** 153; *Mason v. Wait,* 4 Scam. [Ill.], 127; *Worth-*

*ington v. McRoberts,* 9 Ala., 297 ; *Fox v. Mensch,* 3 Watts
& Serg. [Pa.], 444; *Mellen v. Boarman,* 13 S. & M.
[Miss.], 100 ; *Lynch v. Baxter,* 4 Tex., 431; *Bingham v.
Maxcy,* 15 Ill., 295; *Vandever v. Baker,* 13 Pa. St., 124;
*Anderson v. Foulke,* 2 Har. & G. [Md.], 346 ; *Thompson
v. Munger,* 15 Tex., 523; *Bickley v. Biddle,* 33 Pa. St.,
276 ; *Strouse v. Drennan,* 41 Mo., 289 ; *Walden v Gridley,*
36 Ill., 523; *Creps v. Baird,* 3 O. St., 278 ; *Miller v. Finn,*
1 Neb., 255; *Frasher v. Ingham,* 4 Neb., 531.)

NORVAL, J.

The Nebraska Loan & Trust Co. brought suit in the
district court of Butler county against Byron E. Taylor
and Lila A. Taylor, his wife, to foreclose a mortgage upon
the south half of section 12, in township 15 north, of
range 1 east, executed by the Taylors, which mortgage was
junior and subject to a prior mortgage of $3,000, on said
real estate, owned and held by one Washington Quinlin.
The court found there was due the Loan & Trust Company
on its mortgage the sum of $1,056.60; that said Quinlin
had the first lien on said premises for $3,000 with interest
thereon at six per cent from July 1, 1888, and a decree of
foreclosure was rendered, which directed the sale to be made
subject to the lien of Quinlin. Subsequently an order of sale
was issued, and the land, after being duly appraised and ad-
vertised, was sold by the sheriff to one W. C. Norton, the
plaintiff in error herein, for the sum of $2,535. The sale
was reported by the sheriff to the court and the same was
approved and confirmed. Shortly thereafter, at the same
term of court, the purchaser filed a motion to vacate and
set aside the sale on the ground that he was induced to
purchase the property by reason of certain representations
made by the sheriff and the clerk of the district court as to
the character of the title the purchaser would acquire. The
motion was overruled, and Norton was ordered to pay into
court the amount of his bid. To reverse said order Nor-
ton prosecutes a petition in error to this court.

It appears from the affidavits filed in support of the motion to set the sale aside, that Mr. Norton came to the place where the sheriff was offering the property for sale, and inquired what he was selling, to which the officer replied that it was the B. E. Taylor land, and requested Norton to make a bid thereon; that Norton thereupon asked what amount must be bid to get the land, to which the sheriff replied that under the appraisement it could not be sold for less than $2,533.60, as that was two-thirds of the appraised value, and that by paying said sum he would acquire a good and perfect title to the land, free from all liens; that the sheriff and Norton then went to the office of the clerk of the district court to ascertain what amount was against the land, and the clerk, after examining the papers, told Norton he would have to bid $2,533.60 to get the land, but he had better make the bid $2,535 even, and thereby get a little above two-thirds of the appraised value; that the payment of said sum would clear the land of all prior liens and incumbrances; that relying upon said statements Norton made a bid of $2,535, and the land was struck off to him at said sum.

On the next day, the sheriff, on meeting Norton, said to him that the amount of his bid was not two-thirds of the appraisement; that the land had been appraised at $4,800 and could not be sold for less than $3,200, and that unless Norton would raise his bid to said sum he could not have the land; whereupon Norton replied he would not bid the sum of $3,200, and the sheriff then stated that such sale must be declared off.   It also appears that the statements of the sheriff and clerk were innocently made and without any intention to mislead or deceive the purchaser.   It is also shown by uncontradicted testimony that the land was well worth $6,400.

The object and purpose of the plaintiff in error is to set aside a sheriff's sale on the ground that he did not thereby acquire the title which he at the time supposed he was pur-

chasing. No claim is made that either the plaintiff in foreclosure, or Taylor, or his wife, was guilty of any fraud, or that any representations were made by either of them to Norton, as to the character of the title to the land, or that they had any knowledge at the time of the purchase of the statements and representations made by the clerk and sheriff. The only proposition presented is whether the fact of the sheriff and clerk having represented to Norton that, if he would buy the land, he would get a clear and perfect title thereto, free from liens, although such representations were untrue, was sufficient to require the court to set aside the sale. In our view, under the facts disclosed by this record, and the law applicable thereto, plaintiff in error is not entitled to any relief. Ordinarily a purchaser at sheriff's sale takes all risks. He buys at his peril, and if the title is bad, he must stand the loss. The rule of *caveat emptor* applies in all its force to all judicial sales. The court undertakes to sell the title of the defendant, such as it is, and it is the duty of the purchaser to ascertain for himself the character of the title he is about to acquire. (*Miller v. Finn*, 1 Neb., 254; *Smith v. Painter*, 5 S. & R., 225; *Vattier v. Lytle's Exrs.*, 6 O., 478; *Lewark v. Carter*, 117 Ind., 206; *Corwin v. Benham*, 2 O. St., 36; *Mason v. Wait*, 4 Scam. [Ill.], 127; *Bishop v. O'Conner*, 69 Ill., 431; *Sackett v. Twining*, 57 Amer. Dec., 599; *Lynch v. Baxter*, 4 Tex., 431.)

An exception to the rule above stated, recognized by the weight of authorities, is where the purchaser has been induced to bid by fraud, or under a mistake of fact. A purchaser will be released from the sale on the ground of a mistake of fact, when the mistake is not the result of his own negligence, if application therefor is made at the proper time; but he will not be released from his purchase on his mere ignorance or mistake of law. (*Haden v. Ware*, 15 Ala., 149; *Burns v. Hamilton*, 33 Id., 210; *Hayes v. Stiger*, 29 N. J. Eq., 196; *Upham v. Hamill*, 11 R. I.,

565.)  The facts do not bring the case at bar within the exception to the rule, so as to entitle Norton to have the sale set aside.  Neither the clerk nor sheriff misrepresented any material fact concerning the condition of the title.  They did not inform the purchaser that there were no incumbrances upon the property, nor does Norton claim that he was not aware of there being a prior mortgage of $3,000 on the premises at the time he made his bid.  The clerk and sheriff supposed that the sale would extinguish all incumbrances and that the purchaser would acquire a perfect title to the property.  In so informing Norton, they misstated the law, or the legal effect of the foreclosure proceedings and sale, and for which the law affords no relief.

We think plaintiff in error is concluded by his own neglect.  He had no right to rely upon the statements of the clerk and sheriff, but should have had the title and the proceedings under which the sale was made examined for himself, before he made his bid.  Had he done so, he would have been fully apprised of the condition of the title.  The records of the county and of the court are open to inspection to every one, and these records disclose the objection now urged to the title of the lands.  Had an examination been made of either the petition to foreclose the mortgage, the decree, the appraisement, certificate of liens, or notice of sale, he would have ascertained that Washington Quinlin had a first lien upon the premises for $3,000 and interest, and that the sale was to be made subject thereto.  If Norton was deceived, it was the result of his own negligence in not taking the precaution to examine the records.  He is chargeable with knowledge of their contents.  Equity will not relieve a purchaser of his own negligence.  (*Roberts v. Hughes*, 81 Ill., 130; *Vanscoyoc v. Kimler*, 77 Ill., 151; *Riggs v. Pursell*, 66 N. Y., 193; *White v. Seaver*, 25 Barb., 235; *Eccles v. Timmons*, 95 N. C., 540; *Weber v. Herrick*, 26 N. E. Rep. [Ill.], 360; *Dennerlein v. Dennerlein*, 19 N. E. Rep. [N. Y.], 85.)

In *Eccles v. Timmons, supra,* it is held that a purchaser at a judicial sale will not be released from his bid on the ground that the title is imperfect, when the true state of the title is set out in the pleadings under which the sale was made.

*Dennerlein v. Dennerlein,* 19 N. E. Rep., 85, was a partition sale. The property was described in the proceedings and in the notice of sale by metes and bounds and as "containing 31 acres, be the same more or less." Prior to the sale, hand-bills were issued in the name of the referee who made the sale, in which the boundary lines of the premises were omitted, and the property was described as "the farm of the late John Dennerlein, containing 31 acres." The purchaser, in bidding upon the property, relied upon the statement in the hand-bills as to the quantity of land. Subsequently he discovered that the premises only contained 24¾ acres, and applied to the court for an order releasing him from completing the purchase on the ground that he had been misled as to the number of acres, which motion was denied. He appealed to the general term, where the order was affirmed, and, on appeal to the court of appeals of New York, it was held that he was not entitled to relief.

*Vanscoyoc v. Kimler, supra,* was an appeal from an order of the circuit court, sustaining a motion made therein by the purchaser, to set aside a sale of a tract of land made upon execution, on the ground that he was led to believe, by misrepresentations made by the officer conducting the sale, that the land was not incumbered, when in fact it was mortgaged in excess of its value. The supreme court held that the maxim of *caveat emptor* applied, and that the misrepresentation of the sheriff afforded no ground for setting aside the sale.

In the case at bar the price paid was so greatly inadequate to the real value of the land as to put the purchaser on inquiry. He should have known that a half section of

land, which the evidence shows was well worth $6,400, would sell for more than $2,535, the amount of his bid, if there was no prior incumbrance. The land was actually worth several hundred dollars more than the amount bid by Norton and the Quinlin lien combined, so that, instead of losing anything by the transaction, the investment is still a profitable one. He does not complain that he has lost anything by the transaction, but rather that he failed to double on the investment.

Concerning what took place between the sheriff and Norton the day following the sale, to which reference has been made, we will say that it is unexplainable how the former made the statements he did, if correctly quoted in Mr. Norton's affidavit, in regard to what the land was appraised at. It is not true that it had been appraised at $4,800, and could not be sold for less than $3,200. The sum bid by Norton was more than two-thirds the appraised value of the land, as shown by the appraisement. However, what the sheriff may have said in that regard, as well as the statement that "the sale must be declared off," is of no importance, for the reason that the status of Norton, as purchaser, was fixed when his bid was accepted; the officer had no power or authority to afterwards release him from his purchase.

It is contended that this case falls within, and is controlled by, that of *Paulett v. Peabody*, 3 Neb., 196, and *Frasher v. Ingham*, 4 Id., 531. We do not think so. These cases were decided upon facts materially different from this. In the first case there was a decree of foreclosure of a junior mortgage, in a suit wherein the senior mortgagee was not a party. The property was sold under the decree by the sheriff, the purchaser being induced to buy the property through the false representations of the attorneys of both the plaintiff and the senior mortgagee, that the junior mortgage would be paid off out of the proceeds of the sale, and that he would take the property dis-

charged of such lien. It was held that said false representations of the parties were sufficient grounds for vacating the sale. In the case we are considering it is not pretended that any misrepresentations or fraud can be imputed to any of the parties to the suit, or to Quinlin, the senior mortgagee, whereby Norton was induced to buy the land. Of course, when a fraud is practiced upon the purchaser at a judicial sale by the party in interest, which induced the purchaser to make his bid, the sale will be set aside therefor. But the rule has no application here.

In the case reported in 4th Nebraska the sheriff levied an execution upon, appraised, and sold, a tract of land covered with timber. The sale was duly confirmed and a deed executed to the purchaser. Afterwards it was discovered that the record of the proceedings under the writ described another tract near by, which was of no value whatever. It was held, on a petition of the purchaser to set aside the sale, that he was entitled to relief. Clearly the case is not analogous to the one before us, for in this case there was no error in describing the lands, as in the case cited. The doctrine announced in these decisions should not be extended to cases not clearly of their class.

We are of the opinion that the district court did not err in overruling the motion of the plaintiff in error to set the sale aside, and its decision is

AFFIRMED.

POST, J., did not sit.

MAXWELL, CH. J., dissenting.

I am unable to give my assent to the opinion of the majority of the court, and will, as briefly as possible, state my reasons for failing to concur with the majority.

This is an application to compel the purchaser of land under a decree of foreclosure of a mortgage to complete the purchase by paying the amount of his bid.

He answers, in effect, that he was induced to bid by the

misrepresentations of the officer conducting the sale, and that a large mortgage, viz., $3,000, exists as an incumbrance against the land which he was induced to believe would be satisfied out of the proceeds of sale.

The cause was submitted to the court on affidavits as follows:

"W. C. Norton, being first duly sworn according to law, deposes and says that on the 14th day of September, 1889, while the sale was being made of the lands sold under the order of sale in this case, this affiant had a conversation with the sheriff of said county, who was then and there conducting the said sale, wherein said sheriff stated to this affiant that said land, under the appraisement, could not be sold for less than $2,533.60, and that, under the appraisement, said last named amount would be sufficient to buy the same; that said sheriff then and there examined the report of the appraisers, the certificates of the county clerk, clerk of the district court, and county treasurer, and, after making said examination, and after figuring up the amount of the decree, and the amount of liens on said lands, stated to this affiant that the said sum of $2,533.60 would be sufficient to purchase said land, and that, by paying the said sum of $2,533.60, this affiant would acquire a good and perfect title to said land, free and clear of all previous liens or incumbrances. This affiant then and there trusted and believed the said statement and representation of said sheriff, and then and there believed that by bidding the sum of $2,535.00 for said land, paying the said sum of $2,535.00 therefor, he would receive and have a good title to said land, free and clear of all other liens and incumbrances thereon. Said affiant then and there stated to said sheriff that he would give the sum of $2,535.00 for said land if he thereby would acquire a clear deed and title to said land, free of all prior liens and incumbrances; that said sheriff then and there stated that this affiant would acquire such a deed and title.

"Affiant says that the clerk of this court, Ed. G. Hall, was also present when said sheriff stated to this affiant that a bid of $2,535 would entitle the purchaser to a deed for said land, and that the payment of said $2,535 would clear said land of all prior liens and encumbrances and that said Ed. G. Hall then and there assisted said sheriff to look over and examine said appraisement and certificates, and assisted to figure up the amount of said decree and said liens, and the said Ed. G. Hall also then and there, before the time he, this affiant, bid the said sum of $2,535, stated that said sum of $2,535 was more than two-thirds of the appraised value of said land, and that by bidding the said sum of $2,535, he would be entitled to a deed therefor, and that a deed under said bid would entitle the purchaser to a deed free and clear of all prior liens and encumbrances; that this affiant then and there believed and trusted in the said statements and representations of said sheriff and said clerk, and acted upon their said statements and representations in making said bid.

"Affiant says that said sheriff and said clerk stated to said affiant that no bid less than $2,533.60 could be received for said land, stating that said last named amount was two-thirds of the value of said land, and that after the payment of said amount there would be no prior liens on said land.

"That on the next day, after bidding said sum of $2,535 for said land, to-wit, on the 15th day of September, 1889, he met said sheriff, whereupon said sheriff stated to this affiant that the said amount bid by this affiant, to-wit, $2,535, was not two-thirds of the appraised value of said land; that said land had been appraised at the sum of $4,800, and could not be sold for less than $3,200, and that unless he, this affiant, would raise his said bid to the said sum of $3,200, he, said sheriff, could not sell said land to this affiant, whereupon said affiant stated to said sheriff that he, this affiant, would not bid the said sum of $3,200;

that said sheriff then stated to this affiant that said sale must be declared off, and no sale, as he, said sheriff, could not sell said land for less than $3,200; that this affiant then and there believed that his said bid of $2,535 was wholly rejected by said sheriff, and he would not be held to act upon said bid or pay for said land, and paid no more attention to said pretended purchase, and did not suppose or anticipate that any effort would be made to confirm said sale, offer or bid, and was not present in court when said sale was confirmed, and had no notice that an application would be made to this court to confirm said sale, and was not in the court room and not in Butler county when the sale was confirmed; that if he had known or supposed that an application was going to be made to this court to ratify or confirm his said bid, he would have appeared by counsel and have opposed said confirmation on the ground, and for the reason, that in fact he was misled and deceived by the said statements and representations of said sheriff and said clerk in this, to-wit:

"First—That the decree under which said land was sold was not a first lien on said land; that in fact there was a prior lien on said land amounting to the sum of $3,000, and that said land was sold subject to said prior lien of $3,000, which said prior lien of $3,000 consists of a mortgage given thereon by Byron E. Taylor and wife to the Nebraska Loan & Trust Co., which said mortgage is in full force and effect and not yet due.

"Second—That said land, or the interest therein of said Byron E. Taylor and wife, was not appraised at the sum of $3,800 as stated by said sheriff, and said clerk, at and before the time of said bid, but that said interest of Byron E. Taylor and wife, in said premises was appraised at the sum of $1,478.64, and that in fact said land could have been bought at said sale for two-thirds of said last named amount, as fully appears by the records and files in this proceeding.

"That if this affiant had known the true condition of liens and incumbrances on said land, and had been correctly informed of the true condition of affairs regarding liens and incumbrances on said land, by said sheriff and said clerk he would not have purchased or bid on said land, and had he known or supposed that an application was about to be or going to be made to this court to confirm said sale, and had he not been misled by the said sheriff, telling this affiant that he, said sheriff, could not accept said bid, he, this affiant, would have at once, and before the confirmation of this sale, taken steps to examine and determine the regularity of said sale, and the reasonable or unreasonable extent of his said bid, that he had no knowledge or information that an application had been made to confirm said sale, until after the same was confirmed by this court, whereupon he at once took steps to institute this motion, and says that a great wrong, hardship, and injustice will be done this affiant if he is compelled to pay the amount of his said bid or offer, and that said bid or offer was made under a misapprehension of the true facts surrounding said bid or offer, as stated and recited in this affidavit.                    W. C. NORTON."

"I, Ed. G. Hall, being first duly sworn, depose and say: I am the clerk of the district court of Butler county, Nebraska, duly qualified and acting as such, and was on the 14th day of September, 1889. And on the said 14th day of September the sheriff of Butler county was making sale of one Byron E. Taylor's farm, by virtue of an order of sale in the above entitled cause.

"That during the time of said sale the said sheriff came to my office, and I asked him, 'Have you a bidder for the land?' He answered, 'No; I have not, but I think Norton is going to buy it.' He then went out, and shortly after, W. C. Norton came to my office and asked me how much there was against the Byron E. Taylor farm. Before having time to answer, the sheriff returned, and together with said

Norton, seated themselves at a desk in my office. While at the desk I heard said Norton say to the sheriff, 'If you'll make me a clear title to the land I will buy it.' The sheriff then said, 'I will make you a sheriff's deed.'

"I then said, 'a sheriff's deed is as good a deed as can be made'; that his, said Norton's, title, would be perfectly good upon receipt of a deed of that kind. I then picked up from the desk the order of sale and certificates attached and said to the said Norton, 'I will tell you in a minute what you'll have to pay to get the land;' but upon looking over the papers did not find the said appraisement, and being in a hurry asked the sheriff what the appraisement was; he replied that it was $——— .

"I then said to said Norton, 'You'll have to pay two-thirds of this amount, which will be $2,533.60.' and I further said to the said Norton, 'You had better make the bid $2,535, even; you'll be sure then to cover everything.' I also told said Norton that all other liens would be canceled as against this land when the sale was confirmed, not knowing at that time that said sale was being made subject to the lien of Washington Quinlin for $3,000, but did know that said lien and mortgage did exist but believed and told said Norton that said lien would be no good if the sale was confirmed under his bid, and further, this affiant sayeth not.                    ED. G. HALL."

It will be observed that Norton applied to the clerk who should have had the appraisement if the sheriff had done his duty. The appraisement would have shown what liens existed against the land. The sheriff did not seem to have it in his possession. In view of the course he pursued afterwards it is probable that he had a design in suppressing the appraisement.

" I, Sumner Darnell, being first duly sworn, depose and say that I am the sheriff of said county, duly qualified and acting as such; that on the 14th day of September, 1889, while I was offering the land described in the order of

sale in the above named cause for sale, under an order of sale issued in the above entitled cause, on the 12th day of July, 1889, one W. C. Norton came to me and said, 'What is this you are selling?' I says, 'A farm.' He says, 'What farm?' and I says, 'E. B. Taylor's.' He says, 'What have you been offered?' I told him, 'I have no bid yet,' and asked him to make a bid. He, Norton, said, 'What is there against it?' Then I told him to go up stairs to the clerk of district court, Ed. G. Hall, who is there in his office and see for himself. Then he, Norton, says, 'If you will make me a clear title, I'll give you $——.' Then he went up stairs to the office of the clerk of said district court. In a few minutes I followed. I asked him what he had found out. Ed. G. Hall, the said clerk, said, 'It will take $2,533.60 to make two-thirds of the appraised value.' Then Ed. G. Hall says, 'You had better make it $2,535, and make sure that the amount is sufficient for the two-thirds of the appraised value.' And I, believing that the two-thirds of said appraisement was $2,533.60, and being in good faith that that was the least amount that would buy said land at said sale, said, 'Yes, you had better make it $2,535,' and he, Norton, said, 'Well, I'll raise it that much if you'll make me a good deed.' I said, 'I'll make you as good a deed as a sheriff can make,' or words to that effect. Then I went down stairs, and receiving no other bid, declared it sold to W. C. Norton. The next day, the 15th of September, or within a day or so after, I met said W. C. Norton and told him there was a mistake, and that his bid was not two-thirds of the appraised value of said land, and the sale would not be confirmed, as I believed. And then he said, 'I will not raise my bid,' and 'I will not take the land;' that said W. C. Norton made no other bid than the offer I have above described.                           SUMNER DARNELL."

As an offset to these affidavits a number of persons were permitted to swear that the land in question was of greater

value than the amount fixed by the appraisers, and was worth from $15 to $20 per acre.

It is very clear to my mind that if the testimony of the witnesses swearing to the increased value is true, that it is an additional reason why the sale should be set aside, because the land-owner is being defrauded.

As an evidence that the testimony is not true, however, the land-owner, as well as the trust company, is here insisting on the performance of the contract, evidently believing that the property would not bring as much if again offered for sale; but even if the affidavits are true as to the value, they cannot be considered in this case.

Suppose the plaintiff in error to be a man of very limited means who desired the land for a farm and was able to procure a loan thereon, if free and unincumbered, for $3,000, but utterly unable to obtain a loan for any greater sum. In a case of that kind it would be possible to rob him of every cent he possessed by compelling him to accept property subject to a heavy incumbrance when he had no means of satisfying the same. It will not do to say that the plaintiff in error possesses sufficient means and is able to satisfy the incumbrance, because the same rule must apply to rich and poor alike, and both will suffer by the proposed rule. It will be observed that the majority opinion is predicated almost wholly upon sheriffs' sales under executions in actions at law, or in partition cases.

The case of *Eccles v. Timmons*, 95 N. C., 540, cited in that opinion, was a partition case, and the title of the various parties was set out in the petition. In that case the petition evidently contained a condensed statement of the title of the several parties, and the objection was not made for many months after the purchaser had taken possession, and not until a payment was due. It is said: "It will be observed that the title of the defendant-tenants is set out in the petition, and a copy of the deed under which they derive it annexed thereto. With the information thus

34

furnished, or of easy access, the purchaser bids for the lot, pays part of the purchase money and secures the residue by a note with the allowed credit.    This credit expired on December 1, 1885, and seven months thereafter, when served with a notice of a demand for judgment, for the first time the defense is set up of an imperfect title to the lot.

"It is not a case when, upon the face of the pleadings, a perfect title purports to be sold that is afterwards discovered to be defective, when the court will relieve and not compel the purchaser to pay for what he does not get.    But the true state of the title appears in the averments in the petition itself, so that every bidder may know by examination what estate he will acquire in the land, and his bid must therefore be regarded as his own estimate of the value of what he may buy, and the court may direct thereafter to be conveyed.

"A sale by the master in a case of this kind (for partition), says Ruffin, C. J., in *Smith v. Brittain*, 3 Ired. Eq. [N. C.], 347 (351), 'is but a mode of sale by the parties themselves.    It is not merely a sale by the law, *in invitum* of such interest as the party has or may have in which the rule is *caveat emptor*, but professes to be a *sale of a particular estate*, stated in the pleadings to be vested in the parties, and to be disposed of for the purpose of partition only.    Thereupon, if there be no such title, the purchaser has the same equity against being compelled to go on with his purchase, as if the contract had been made without the intervention of the court, for, in truth, the title has never been judicially passed on between persons contesting it."

It seems to me the case is directly against the majority opinion in this case.    A sheriff is the officer provided by law in each county to execute the ordinary process of the court.    His duties are clearly pointed out by statute, while to a considerable extent he is under the control of the court, yet he does not derive his power from it.    Where,

however, a court renders a decree of foreclosure, it directs the sale to be made by some particular person; not necessarily the sheriff. This person may be the sheriff, but if so it is because he is designated by the court to make the sale, and not because the duty devolves upon him as sheriff.

A sale under a decree of foreclosure under the former chancery practice was made by a master in chancery or some one designated by the court; and the same rule prevails under the Code, except that the office of master has been abolished and the court is authorized to appoint a commissioner to conduct the sale. In either case the sale is made by the court and the person conducting the sale is the agent of the court.

In *Veeder v. Fonda*, 3 Paige [N. Y.], 97, it is said: "As property to a vast extent is sold under the decrees and orders of this court, much of which property belongs to infants, and others who are not able to protect their own rights, it has always been an important object with the court to encourage a fair competition at master's sale. For this purpose it is necessary that purchasers at such sales should understand that no deception whatever will be permitted to be practiced upon them. That in a contract between them and the court, they will not be compelled to carry that contract into effect under circumstances where it would not be perfectly just and conscientious in an individual to insist upon the performance of the contract against the purchaser, if the sale had been made by such individual or his agent. It is, therefore, the principle of the court that the master who sells the property shall not, in the description of the same, add any particular which may unduly enhance the value of the property, or mislead the purchaser."

To the same effect is *Post v. Leet*, 8 Paige Ch. [N. Y.], 337 ; *Seaman v. Hicks*, Id, 656. In the last case cited it is said: " The terms of sale show that the land was sold as and

for a good title, except as to the incumbrance mentioned. The court therefore ought not to compel the purchaser to complete his purchase unless he would have obtained under the master's deed such an interest, both in the land and in the buildings thereon, as he was authorized to suppose he was buying when the property was struck down to him upon his bid." The court in that case, however, reached the conclusion that the title was as represented and required the purchaser to perform. See also *Kauffman v. Walker*, 9 Md., 229; *Merwin v. Smith*, 1 Green Ch. [N. J.], 182; *Den v. Zellers*, 2 Halst. [N. J.], 153*; *Hodgson v. Farrell*, 2 McCart. [N. J.], 88.

Many other cases to the same effect might be cited. Where a sale is conducted by a commissioner under a decree of foreclosure, the commissioner represents the court. He is the hand of the court, so to speak, by which the decree is carried into effect. Any misrepresentations made by him, even if innocently made, but by reason of which the purchaser has been induced to bid and will not acquire the interest which he is led to believe he would acquire are sufficient to justify setting the sale aside. This, so far as I am aware, is a uniform rule in courts of equity that if the person who conducted the sale made misstatements, either honestly, ignorantly, or intentionally, whereby the purchaser was deceived, and would be defrauded, the sale will not be sustained against his objection.

It is no answer to say, in effect, that the property is cheap enough anyway, and therefore the purchaser receives the worth of his money. That is begging the question; in effect, it is admitting all that is claimed, but seeking to excuse the denial of relief.

The purchaser may justly say: "I was deceived by the false representations of your agent; he misstated the facts; the appraisement was not at hand, so that even the clerk could not obtain it. There was no bid but mine, and that was procured by falsehood and misrepresentation." The

misrepresentation is admitted, and the court answers the purchaser, in effect: "You had no right to rely upon the representations of the commissioner appointed by the court to conduct the sale, and, although you were the sole bidder and there was an incumbrance of $3,000 on the land of which you had no notice, and was in excess of the amount of your bid, yet the land is cheap enough and the court will not relieve you."

In regard to the objection that the purchaser could have examined the title for himself, the answer is that there was no time to make an investigation of the title. The sheriff had offered, and was then offering, the property for sale. There were no bidders. Norton came up and inquired in regard to the sale and the title that would be acquired. The officer professed to know, and informed the party that he would obtain a clear title. The bidder certainly could rely upon this statement. Had the officer said, "I have no knowledge in regard to the matter, you must examine the records for yourself," then the purchaser would have bid at his peril, and the doctrine of *caveat emptor* would have applied.

Considerable stress is laid upon the doctrine of *caveat emptor*, and it is said the purchaser must beware. The doctrine does not apply where a party has been induced to bid by a misstatement of facts made by the officer who conducted the sale; and I think not a single case can be found where a sale was made under a decree of a court of equity by an officer appointed by the court where such misrepresentations have not been held good cause for setting the sale aside.

The decision in this case practically overrules *Paulett v. Peabody*, 3 Neb., 196; and *Frasher v. Ingham*, 4 Neb., 531, and, I believe, does great injustice to the purchaser, and places the court in the attitude of approving deception in its officers in conducting sales under its direction.

Second—It is admitted, by not being denied, that "on

the 15th day of September, 1889, he (Norton) met the sheriff, whereupon said sheriff stated to the affiant that the said amount bid by this affiant, to-wit, $2,535, was not two-thirds of the appraised value; * * * that the land had been appraised at $4,800, and could not be sold for less than $3,200, and unless Norton would raise his bid to $3,200, the sale would be declared off," etc. That is, that Norton's bid was not sufficient to authorize the sheriff to entertain it, and therefore, unless Norton would raise the bid to $3,200, he would make a report of no sale. Norton informed him that he would not raise his bid, and the sheriff in effect declared it off.

It is probable that this was part of the scheme to defraud Norton, by putting him off his guard, and preventing an investigation of the title before the sale was confirmed, because the sheriff, without further notice to Norton, made a report of the sale and it was thereupon confirmed, without notice to Norton, and in his absence.

So far as the sheriff is concerned, his conduct is wholly indefensible, and can only be accounted for upon the theory of a scheme to defraud Norton, in which, probably, he was not alone. I do not care to comment on this feature of the case, as it presents the officer in a very unenviable light. As I understand the law, a court of equity, in making a sale of real estate under a decree of foreclosure, takes the place of the vender, and the person making the sale is the agent of the court, and it is the duty of the court to see that the sale was fairly conducted in all respects, and that it will not sanction misrepresentations in its agent as to the title of the property, or incumbrances, to induce persons to bid. In other words, misrepresentations which, if made by the land owner himself to a purchaser, would be good ground to set a sale aside, are equally so when made by the person appointed by the court to conduct a sale under a decree; and experience has shown that the establishment of this rule has induced competition in bidding

at such sales. (*McGown v. Wilkins*, 1 Paige Ch. [N. Y.], 120; *Morris v. Mowatt*, 2 Id., 586; *Veeder v. Fonda*, 3 Id., 94; *Seaman v. Hicks*, 8 Id., 656; *Kauffman v. Walker*, 9 Md., 229; *Tooley v. Kane*, 1 S. & M. Ch. [Miss.], 518.)

Third—I do not understand that the rule of *caveat emptor* applies where another element intervenes, viz., false representations. It seems to me that great injustice is done to the plaintiff in error, and a rule is established that is liable to be fraught with gross injustice, not only to purchasers at judicial sales, but to the owners of the equity of redemption as well. In my view, the sale should be set aside.