FRANCIS LINDSLEY, A. R. BAXTER, *et ux.,* v. JOHN J. PHARE

155 So. 812.
Opinion Filed June 14, 1934.
Petition for Rehearing Denied July 6, 1934.

*Archie Clement,* for Appellants;
*Orvil L. Dayton, Jr.,* for Appellees.

BUFORD, J.—In 1929 the appellees here brought to this Court for review a final decree in the case of John J. Phare and wife, Elizabeth Gregory Phare, v. Warner E. Randall. See 97 Fla. 858, 122 Sou. 217. The decree in that case provided, amongst other things:

"That the said defendants, John J. Phare and Elizabeth Gregory Phare, at the time of the filing of said bill and of the allowance of the said amendment of February 8, 1926, were the owners of certain lots and of certain personal property both of which they held by virtue of being conveyed or transferred or made payable to them in one and the same instrument and thereby vesting them with said properties as an estate by entireties, the said properties so held as an estate by entireties being as follows, to-wit:

".(g) Lots 1 and 3 to 11, inclusive, of Block 2 of Fair-Haven Subdivision, being a resubdivision of Lots 7 and 8 in Block 207 in the Town of New Port Richey, Florida, and in making said resubdivision Lot No. 7 of Block 207 was the property of John J. Phare and Elizabeth Gregory Phare, so that all said resubdivided lots described, to-wit,

Lots 1 and 3 to 11, inclusive, of Block 2 of Fair Haven subdivision were and are property of said John J. and Elizabeth G. Phare, conveyed to them by deed dated April 16th, 1925; made by E. D. Fenton and his wife, Mable L. Fenton, which deed is recorded in Deed Book 63, Page 380, in the Public Records of Pasco County, and by deed the title to said land was conveyed to said John J. Phare and Elizabeth Gregory Phare, their heirs and assigns forever, and, to have and to hold the same in fee simple forever; and with warranty of title and in the usual form of a warranty deed, properly executed, acknowledged and recorded.

"(h) Also, as personal property they hold as an estate by entireties a certain promissory note in the sum of $1,300.00 dated April 1st, 1924, executed by Frances Lindsley, widow, payable three years after date to the order of John J. Phare and Elizabeth Gregory Phare with interest from date until paid, at the rate of eight per cent. per annum, payable semi-annually. Said note is secured by a mortgage executed by Frances Lindsley, widow, having the same date, mortgaging to the said John J. Phare and Elizabeth Gregory Phare, their heirs and assigns forever, Lot No. 1 in Block 156, Town of New Port Richey, Florida, according to the Port Richey Company's Plat recorded in Book 2, page 21, Public Records of Pasco County, which mortgage itself is recorded in Mortgage Book 18, page 266, in the Public Records of said Pasco County, Florida, and which properties being thus held as an estate by entireties are subject to be charged in equity for the payment of the indebtedness due to the complainant, Warner E. Randall, as hereinbefore recited."

It further provided:

"And it having been alleged in the Bill that certain property therein described is held by the defendants, John J.

Phare and Elizabeth Gregory Phare, as an estate by the entireties and the answer of the said defendants having admitted that the specific properties named are so held as an estate by entireties and the Court having found from the evidence submitted that it is true that such properties are held by an estate by entireties, it is further ordered and decreed that the amount and the several sums decreed in favor of the complainant be and they are made a charge and a lien in equity against the said items of property held as an estate by entireties, said properties referred to being those fully described in paragraph 11, sub-paragraphs (g) and (h) of this decree, and that the said properties be sold by the Special Master as elsewhere provided in this decree."

· The decree in this regard was reversed and in that case we held:

"As to the separate property of Elizabeth Gregory Phare the cause is reversed on authority of Blood v. Hunt and Blood v. Huey, decided by this Court April 16, 1929; Rice v. Cummings, 51 Fla. 535, 40 So. R. 889. As to the joint property or property by the entireties of John J. and Elizabeth Gregory Phare the cause is reversed on authority of Ohio Butterine Co. v. Hargrave, 79 Fla. 458, 84 So. R. 376. As to the homestead property of John J. Phare the cause is reversed on authority of Section One of Article Ten of the Constitution, the judgment lien here brought in question not being within the terms of those enumerated in that Article."

After the appeal was taken the notes and mortgage above referred to were sold by the Master and bought in by the maker of such notes and mortgage. Thereafter, the appellee here filed bill of complaint to foreclose that mortgage, alleging all the salient facts necessary to be alleged in a bill to foreclose a mortgage and further alleging that the notes

and mortgage had been unlawfully taken by the Master in Chancery in that former suit and sold under the terms of the decree above referred to, the maker of the notes and mortgage being the purchaser at such sale. It is alleged in the bill that the Master did not convey, and could not convey, any title to the purchaser because the notes and mortgage were property of the complainants by the entireties and were not property the title to which was so vested that they were subject to sale to satisfy the decree which had been appealed from and reversed.

· Demurrer was filed to the bill of complaint. The Chancellor first sustained the demurrer and then he granted a rehearing, and, after considerable time, entered another order overruling the demurrer. From that latter order the appeal is taken.

It is first contended that error was committed by the Chancellor when he denied a motion to dismiss the bill of complaint after the case had lain dormant with no steps being taken for a period of more than three years. This objection is not well taken because the order of the Chancellor overruling the demurrer states upon its face that steps had been taken in the cause and that the matter had been presented for his consideration within three years and there is no evidence of superior dignity that this certificate of the Chancellor is not true. We give it full credence, attributing to it the presumption which it is entitled to have as a part of the Chancellor's decree.

The next question presented is whether or not the complainants in this suit may recover from the purchaser at a Master's sale. We admit that the general rule is, as stated in Johnson, *et al.,* v. McKinnon, 54 Fla. 221, 45 Sou. 23:

"Upon the reversal of a judgment after a sale has been made under execution to a *stranger* to the suit, the defend-

ant must seek redress from the *plaintiff*. Where the plaintiff has received the *proceeds* of the sale the defendant may recover in an action for money had and received. If, however, the money, after being paid to plaintiff, is by him paid to a third person, it cannot be recovered from such person, though he was one of the plaintiff's attorneys."

And, as we said in Simms v. City of Tampa, 52 Fla. 641, 42 Sou. 884:

"There was no error in the order made and questioned here. It is well settled that restitution, on reversal of a judgment, can be compelled only from parties to the record, or from their beneficial assigns, or in case of the death of the execution plaintiff, from his executor or administrator. Restitution cannot be compelled from third persons, strangers to the record, who were *bona fide* purchasers at a sale under process dependent upon a judgment subsequently reversed, or who acquired *bona fide* collateral rights thereunder and their rights are in no way affected by the subsequent reversal of the judgment. Particularly should restitution be denied as against a stranger to the record when sought in a summary manner by motion, rule or petition as was attempted in this case."

In the latter case many authorities are cited supporting that enunciation.

But in this case the decree under which the sale was made showed upon its face that the property ordered sold was held as an estate by the entireties and was not subject to sale to satisfy the deficiency decree for which it was ordered sold. In other words, the decree showed upon its face that the Chancellor had no more authority to order this property sold to satisfy the deficiency decree than he had to order the property of one who was a stranger to the suit sold for the same purpose. The title to the property sold was not

in the defendant. Moreover, it apears that the purchaser at the sale, being the maker of the notes and mortgage on the property involved, had full knowledge that the title to such property was held as an estate by the entireties by husband and wife and was charged with knowledge that it could not be sold to satisfy the deficiency decree involved. The decree ordering the sale of the notes and mortgage showed upon its face that such notes and mortgage constituted property of which the Court did not have jurisdiction to order sale.

In Norton v. Nebraska Loan & Trust Co. *et al.*, 35 Neb. 466, 53 N. W. 481, 18 L. R. A. 88, the Court said:

"It is a well settled rule that the doctrine of *caveat emptor* applies to all judicial sales, subject to the qualification that the purchaser is entitled to relief on the ground of after-discovered mistake of material facts or fraud, where he is free from negligence. He is bound to examine the title, and not rely upon statements made by the officer conducting the sale, as to its condition. If he buys without such examination, he does so at his peril, and must suffer the loss occasioned by his neglect."

"A purchaser at a mortgage foreclosure sale will not be relieved from completing his purchase on account of defective title, or on the ground of there being prior encumbrances on the property, when the true condition of the title is fully set out in the pleadings and the record of the proceedings under which the sale was made, as he is chargeable with notice of such material facts as the records disclose."

In 16 R. C. L. 119, it is said:

"There are many cases holding generally that in judicial sales the rule of *caveat emptor* applies in its utmost vigor and strictness. The court sells, and can undertake to sell,

only the right, title, interest and property, such as it is, of the parties to the proceeding and the purchaser is charged with knowledge of that fact. It therefore follows that he takes upon himself the risk of finding outstanding rights that could have been asserted against the parties to the proceedings; and if by reason of the existence of such rights, whether known or not, or discoverable or not, he takes less than a complete title to the entire property offered, or even takes nothing at all, by his purchase, he cannot complain and has no defense upon being sued for the purchase price. The rule is of particular force where by the terms of the sale only the right, title, interest and estate of the owner or parties to the proceeding are specifically offered, especially when the true condition of the title is fully set out in the pleadings and record of the proceedings under which the sale was had."

In the case of Williamson, et al., v. Berry, 12 Law Ed. 1170, the Supreme Court of the United States said:

"The case put before us, upon several of the points certified, is this: The State of New York passes certain Acts for the relief of Thomas B. Clarke, in relation to a devise of land, and directs that the Acts shall be carried into execution by the Chancellor of the State. In the course of the proceedings for that purpose, he orders that the Trustee, Clarke, may sell or mortgage particular portions of the land, and permits him to convey parts of it in payment of any debt or debts, upon a valuation to be agreed on between himself and his creditors; and that Clarke may apply the proceeds of sale to the payment of his debts.

"The defendant in this action says he bought from DeGrasse. It is proved that DeGrasse was a creditor of Clarke and that the consideration for Carke's conveyance to him, except the wild lands, was the amount that Clarke

owed to him. Then, in order to sustain Clarke's conveyance to DeGrasse, he introduces the Acts for the relief of Clarke, and the orders of the Chancellor upon them.

"This evidence raises the question, whether or not the Chancellor had jurisdiction to give an order, permitting Clarke to convey any part of the property in payment of a debt. After the most careful perusal of the acts and orders, we have concluded that the Chancellor had not the jurisdiction to give an order permitting Clarke to convey any part of the devised premises in satisfaction of his debts, and that neither DeGrasse nor his alienee Berry, can derive from the order, or the conveyance by Clarke to DeGrasse, any title to the premises in dispute. This conclusion substantially answers the first four points certified; but the answers will be given in more precise form hereafter."

The enunciation was followed in Williams *et al.* v. The Irish Presbyterian Congregation of the City of New York, 12 Law Ed. 1200.

A purchaser at a judicial sale takes title subject to defects, liens, encumbrances and all matters which may defeat the title of which he has notice, or of which he could obtain knowledge in the exercise of ordinary prudence and caution. 35 C. J. 75.

In Ohio Butterine Co. *et al.* v. Hargrave *et al.,* 79 Fla. 458, 84 Sou. 376, we said:

"From the peculiar nature of such an estate, and from the legal relation of the parties, there must be unity of estate, unity of possession, unity of control and unity in conveying or encumbering it; and it necessarily and logically results that it cannot be seized and sold upon execution for the separate debts of either the husband or the wife. The estate is placed beyond the exclusive control of either of

the parties, or the reach of creditors, unless it can be successfully attacked and set aside for fraud."

The result reached in the case of Phare v. Randall, *supra,* was necessarily based upon the finding that the court was without jurisdiction to make an order for the sale of the separate property of Elizabeth Gregory Phare and was also without jurisdiction to make an order requiring the sale of the notes and mortgage here under consideration which was property held by the entireties by John J. Phare and his wife, Elizabeth Gregory Phare. Both items covered property over which the court had not acquired jurisdiction, all of which appeared on the face of the decree under which the property here involved was sold and of which the purchaser at the sale was charged with notice. The sale under such conditions could not deprive the owners of the property of their rights therein.

For the reasons stated, the order appealed from should be affirmed. It is so ordered.

Affirmed.

WHITFIELD, ELLIS and TERRELL, J. J., concur.

BROWN, J., concurs in the conclusion.

DAVIS, C. J., dissents.

WHITFIELD, J. (concurring). — Phare and wife purchased property from W. E. Randall and took title by the entireties. The husband and wife executed a mortgage on the property to secure the purchase price. There was default in payments and the vendor mortgagee brought suit against Phare and wife to foreclose the mortgage. The bill of complaint set out other property including a described note and mortgage executed by Mrs. Lindsley, a widow, to Mr. and Mrs. Phare, and prayed that such property be sold to pay a deficiency decree, if any be rendered in foreclosing the purchase money mortgage. A deficiency

decree was rendered against the husband alone, and the note and mortgage executed by Mrs. Lindsley, a widow, and held by Mr. and Mrs. Phare as by the entireties but not included in the mortgage, was ordered sold and was sold to pay the deficiency decree rendered in the cause against the husband alone. The note was purchased by Mrs. Lindsley, who was the maker of the note and mortgage so sold, but she was not a party to the suit. An appeal without supersedeas was taken by Mr. and Mrs. Phare from the portion of the foreclosure decree which decreed a sale of property to pay the deficiency decree.

After the note and mortgage had been sold under the deficiency decree and purchased by Mrs. Lindsley, the decree was reversed here, this court holding that the note and mortgage being held by Mr. and Mrs. Phare by the entireties, could not legally be sold to pay the deficiency decree against the husband. Phare v. Randall, 97 Fla. 858, 122 So. 217.

Whatever may be the rights of a stranger to the suit who is a *bona fide* purchaser at a sale made under a merely erroneous decree which has been reversed, or whatever may be the rights of restitution a defendant may have upon securing a reversal of a merely erroneous decree against him after his property has been sold under the decree; where a decree is illegal or void, a sale thereunder is likewise illegal or void; and a sale under such a void decree carries no title to the purchaser as against the owner defendant in the suit.

The courts ascertain, develop and declare the principles of the common law; and decrees contrary to the common law may be erroneous, and not illegal or void. Where a decree is not merely contrary to some general provision of organic law, but violates an express, specific, absolute prohibitory command of the constitution, relating to the sub-

ject matter involved such decree is illegal and void, otherwise the constitution would not be the paramount law, and its absolute commands and prohibitions could be nullified by decrees not challenged by appeal or other correcting procedure.

It is alleged that the sale under the deficiency decree is wholly unlawful and without legal authority.

The decree of the Circuit Court ordering the sale of property held by the entireties, not to satisfy a mortgage lien upon such property duly executed by the husband and wife, but to satisfy a deficiency decree against the husband, is erroneous because it is contrary to the principles of the common law affecting estates by the entireties as declared by this court. If such decree violates organic commands it is illegal.

Section 1, Article XI of the Constitution of Florida provides that:

"All property, real and personal, of a wife, owned by her before marriage, or lawfully acquired afterwards by gift, devise, bequest, descent or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing executed according to the law respecting conveyances by married women."

If this organic mandate has been violated by the decree here in question, such decree is clearly subordinate to the constitution which makes the decree inoperative.

The comprehensive command that *all* property owned by a married woman *shall* be her *separate property,* covers the property interest of the wife in estates by the entireties; and the positive prohibition that such separate property of the wife *shall not be liable* for the debts *of her husband* without her consent duly given, is specific and absolute. If

the decree ordering the sale of property held by the entireties to pay the deficiency decree against the husband, which is collaterally attacked in this case, was made without the consent of the wife duly given, it is in direct violation of the quoted specific absolute command of the constitution, which would render the decree illegal and consequently void,

It is alleged that the sale of the property held by the entireties "was wholly unlawful and without legal authority," and that the note and mortgage were "not legally subject to said sale." These are allegations of conclusions without supporting allegations of fact. It is not alleged that such sale was ordered and made without the consent of the married woman duly given. The record in the prior suit is not made a part of the record in this suit. The rights to subject the property to the husband's debt was challenged in the former suit, but such challenge is not alleged here.

It is incumbent upon the complainants to allege facts to show that the mandatory provisions of Section 1, Article XI of the constitution were directly and positively violated by the decree that is collaterally assailed in this case.

As this has not been done, the demurrer to the bill of complaint should have been sustained with leave to amend.

The statement in Anderson, Receiver, v. Trueman, 100 Fla. 727, 732, that "an estate by the entireties is of common law origin and is not a part of the separate property of a married woman as referred to in Article XI of the Constitution," had reference to the method of subjecting such property to the debts of the husband. In that case the property was subjected as required by Sec. 1, Art. XI.

BROWN, J., (concurring).—I concur in the general proposition contended for by Chief Justice Davis. But upon reading the opinion of the former appeal it indicates that this entireties property (the note and mortgage executed

by Frances Lindsley) was not involved in that case and that the court had no jurisdiction over it. The case was a simple mortgage foreclosure on real estate. A deficiency decree was rendered against Jno. J. Phare, and the court reached out without any power or jurisdiction so to do, and ordered the sale of other property held by Jno. J. Phare and his wife in an estate by entireties to satisfy the deficiency decree. This part of the decree was absolutely void for want of jurisdiction. See 97 Fla. 858, 860.

DAVIS, C. J. (dissenting).—John J. Phare and wife, Elizabeth Gregory Phare, brought their bill in equity against Frances Lindsley, Alfred R. Baxter and Hattie E. M. Baxter, the object of the bill being to attack and have decreed void, the title that had been acquired by the said Frances Lindsley in and to a certain note and mortgage sold by a special master of the Circuit Court under a final decree that was subsequently reversed on appeal to this court in the case of Phare v. Randall, 97 Fla. 858, 122 Sou. Rep. 217. It was further prayed that the mortgage be foreclosed against the said Frances Lindsley, and the property covered by its lien sold to satisfy the decree. Upon motion in' the court below, the Court on rehearing reversed its previous ruling sustaining a demurrer to and dismissing the bill. So the proposition now before this Court is whether or not the bill stated a cause in equity for the relief prayed, or any part of it.

The situation we have here as I see it is as follows:

Warner Randall in 1925 brought a suit in equity against the Phares (husband and wife) to foreclose a mortgage and in that foreclosure suit obtained against John J. Phare a personal judgment for a deficiency of $9,075.54. The mortgage was a purchase money mortgage given for property sold to John J. and Elizabeth Phare, his wife. The

Chancellor, however, further decreed that the deficiency judgment should constitute a lien against a certain promissory note in the sum of $1300.00 dated April 1, 1924, executed by Frances Lindsley, widow, payable to the order of John J. Phare and his wife, Elizabeth Phare, the theory being that inasmuch as said note and mortgage was held by the Phares in an estate by the entireties and inasmuch as the deficiency judgment was rendered for a deficiency in the purchase price of an estate by the entireties, that the note and mortgage should be subjected to a lien and sold to satisfy the demand of the deficiency judgment creditor. This Court reversed that part of the decree (Phare v. Randall, 97 Fla. 858) ordering the $1300.00 note and mortgage to be sold, but the reversal did not take place until after the master in chancery had executed the reversed decree by offering for sale and selling the affected note and mortgage constituting the estate by entireties which this Court held not to be subject to sale under the decree. At that sale the note for $1300.00 so sold by the master was bought in by the appellant, Frances Lindsley, and the sale to her was duly confirmed before the reversal of the decree by this Court. Mrs. Lindsley *was not a party to the reversed decree.* Neither was there any supersedeas as to the reversed decree outstanding when the sale was made. The sale was for $1200.00 in cash, a fair price, and was in good faith. It occurred in May, 1927, two years before this Court reversed the final decree under which it was made.

To hold that the special master's sale made in 1927 under a final decree rendered in a case wherein the Circuit Court had obtained and held jurisdiction of both the parties and the subject matter, can be now collaterally attacked and set aside by an independent bill solely because the decree under which the sale was made has been reversed by the Supreme

Court, where the party who became purchaser at the master's sale was not a party to the reversed decree, is to establish in this jurisdiction a rule that prevails in no other jurisdiction either in the United States, England or Canada, that I have been able to find.

One of the questions presented for decision by the Chancellor in Randall v. Phare was whether or not a deficiency decree rendered in a foreclosure suit for the purchase money of property constituting an estate by the entireties, could be impressed as a lien upon an estate by the entireties held by the deficiency decree debtors. That question was a justiciable one and as such was presented in a case wherein the court called upon to decide it was the only court competent to do so, and after it had acquired and still held jurisdiction over the defendants, John. J. Phare and Elizabeth Gregory Phare, at the time its decree was rendered. If the Circuit Court had jurisdiction of the subject matter (the question involved) and of the parties (the Phares), it had jurisdiction to decide the question presented to it, and the fact that it decided the question erroneously, did not oust its *jurisdiction*. Power to decide includes a power to commit error. So the fact that the decree entered was erroneous, and that it was later so found on appeal to this Court, is immaterial to the *validity* of the erroneous decree so long as it stood unvacated, unmodified and un-reversed on appeal.

A collateral attack can be successful only where and to the extent that it discloses a want of *power*, as distinguished from error in the exertion of a power that was possessed. Johnson v. Manhattan Ry. Co., 289 U. S. 479, 53 Sup. Ct. 721, 77 L. Ed. 1331. This is a collateral attack on a sale made by a special master in chancery under a decree which, at the time the sale was made, was in full force and effect;

although erroneous. If there was *power* to enter the erroneous decree there was likewise *power* to make the sale under it at any time prior to its reversal. And insofar as parties to that sale who were not parties to the erroneous decree are concerned, their rights must be tested by the same rules that would apply if the decree had been affirmed, instead of having been reversed. Purchasers under valid, but erroneous decrees, do not take their rights charged with the contingency that they will be lost if the decree is reversed. If that were the rule, supersedeas orders would be unnecessary, since no decree could be carried out except at the risk of losing everything on reversal. That such is not the law in this State has been affirmatively settled already by this Court in the case of Johnson v. McKinnon, 54 Fla. 221, 45 Sou. Rep. 23, wherein this Court said:

"Upon the reversal of a judgment after a sale has been made under execution to a *stranger* to the suit, the defendant must seek redress from the plaintiff."

In this case, Mrs. Lindsley was a *stranger* to the suit in which the erroneous decree was rendered, under which the sale herein attacked was made to her for $1200.00 which she has paid out and which no one in this case, or in any other case, offers to refund to her.

On the other hand the Phares were parties to the suit in which the erroneous decree was rendered and so long as that decree stood unvacated, they were bound by it and what was done under it. They failed to apply for supersedeas to stop the execution of the erroneous decree prior to reversal. And while they are entitled to relief for what they have lost by reason of the execution of the decree before it could be reversed, they are not entitled to relief against Mrs. Lindsley, who was not a party, but a *stranger*

to the suit, and not only a stranger, but one who has put out $1200.00 upon the faith of the decree.

Upon the reversal of an erroneous judgment the law raises an obligation in the party *to the record* (not a stranger) who has received the benefit of the judgment, to make restitution to the other party for what he has lost. Bank of United States v. Washington, 6 Peters (U. S.) 8, 8 L. Ed. 299. A party against whom an erroneous decree has been carried into effect is entitled, in the event of a reversal, to be restored *by his adversary* to that which he has lost thereby. Arkadelphia Mill Co. v. St. L. S. W. Ry. Co., 249 U. S. 134, 39 Sup. Ct. 237, 63 L. Ed. 517. The reversal of a judgment or decree gives a new right or cause of action against *the parties* to the judgment or decree and creates a legal duty to restore what the other party has lost. Bank of U. S. v. Bank of Washington, 6 Peters (U. S.) 8, 8 L. Ed. 299.

If a judgment or decree is reversed after money or property has changed hands by force of it, it is the duty of the inferior court, on the cause being remanded, to restore the parties to their rights. O'Hara v. McConnell, 93 U. S. 150, 23 L. Ed. 840. At common law, where the plaintiff had judgment and execution, and the defendant afterward sued out a writ of error, it was regularly a part of the judgment of reversal that the plaintiff in error "be restored to all things which he hath lost by occasion of the said judgment" and thereupon, in a plain case, a writ of restitution issued at once. Arkadelphia Mill Co. v. St. Louis S. W. Ry. Co. *supra*. Proceedings for restitution are in the control of the court reversed, and all parties should be heard. Northwester Fuel Co. v. Brock, 139 U. S. 216, 11 Sup. Ct. Rep. 523, 35 L. Ed. 151.

In the case of Bank of United States v. Bank of Wash-

ington, 6 Peters 8, 8 L. Ed. 299, *supra,* it was held that where defendants in execution paid a judgment after giving notice of their intention to seek its reversal, they could not recover the moneys from third parties, not a party to the judgment, after reversal of the judgment, because the payment under an unreversed judgment is made under a legal obligation, and the subsequent reversal of the judgment cannot have a retrospective effect so as to make void that which was lawful when done.

It seems to me that the authorities are not only conclusive, but unanimous, to the effect that in a case like that now before us, the remedy of the Phares for recovery of what they lost under the reversed decree is not to collatrally attack the sale by bringing a suit against the purchaser at the master's sale, who was a stranger to the record of the reversed decree, but to bring a restitution proceeding against Warner E. Randall, the opposite party to the record, at whose instance the sale was made and who received the benefit of the $1200.00 which Mrs. Lindsley paid over to the master when she purchased from the master her note and mortgage now being attempted to be foreclosed in this case in the court below.

I therefore disent from affirmance of the order.